[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1121 
¶ 1. Kemper National Insurance Company, and its carrier, Lumbermens Mutual Casualty Company (Kemper), appeal from a decision of the Circuit Court of Madison County affirming the ruling of the Mississippi Workers' Compensation Commission (Commission) that Richard Coleman sustained a "mental-mental" work-related injury and that he was entitled to approximately eight months of temporary total disability payments at $264.55, medical treatment costs, and statutory penalties and interest on unpaid benefits pursuant to Mississippi Code Annotated Section 71-3-37 (Rev. 2000). In this appeal, Kemper asserts three issues which we quote verbatim as follows:
 (1) that the Administrative Law Judge, the Commission, and the circuit court applied an incorrect legal standard when the finding was reached that the evidence presented in this case was sufficient to establish by clear and convincing evidence that the claimant's mental injury arose from or related to some "untoward event or unusual occurrence" or was caused by "more than the ordinary incidents of employment;"
 (2) that the finding of the Administrative Law Judge, the Commission, and the circuit court that Coleman suffered a compensable injury under the Mississippi Workers' Compensation Act and was entitled to an award of temporary total disability benefits was contrary to the overwhelming weight of the evidence and was unsupported by substantial evidence, and
 (3) that the Administrative Law Judge, the Commission, and the circuit court erred in imposing a penalty and awarding interest to Coleman as he had received non-occupational disability benefits and long term benefits during the entirety of the period for which the Administrative Judge awarded temporary total disability benefits.
 ¶ 2. Coleman cross appeals and alleges: (1) that the Commission's denial of permanent disability benefits is contrary to the overwhelming weight of the evidence and entirely unsupported by substantial evidence, and (2) that although the Commission did find the injury compensable, it erred as a matter of law in applying a legal analysis in determining the existence of a compensable "injury" in light of the 1988 amendment to Mississippi Code Annotated Section 71-3-3(b) (Supp. 2000).
 FACTS ¶ 3. Coleman was employed by Kemper at its Jackson/Ridgeland office beginning on December 1, 1980. For years he specialized in handling workers' compensation claims and those claims represented the bulk of the work coming through that office. In 1993, Coleman was promoted to senior claims manager. During the late 1980's and early 1990's, Kemper's automobile and property insurance claims increased, though the workers' compensation claims remained at a fairly constant level. In the mid-1990's, the volume of workers' compensation claims decreased, though Coleman's workload did not decrease, as he took on supervision of automobile claims and handled complex workers' compensation issues.
 ¶ 4. Joe Kitchens was hired shortly before Coleman to work in Kemper's *Page 1122 
Jackson/Ridgeland office. Eventually, Coleman and Kitchens were in competition for the promotion to supervise that office. Kitchens was responsible for handling automobile, property, and some workers' compensation claims. For a short time during the early 1980's, Coleman actually supervised Kitchens. Kitchens eventually completed more training programs, and handled a wider variety of claims, than did Coleman. Kitchens became the manager of the Jackson/Ridgeland office on January 1, 1995. Coleman was disappointed because he was passed over for the position.
 ¶ 5. With Kitchens as his supervisor, Coleman's workload increased. He also differed with Kitchens's emphasis on keeping Kemper's internal work tracking computer system updated. Nevertheless, through 1995 his job ratings indicated he was "promotable." In 1995, however, his annual raise was less than before. On January 16, 1996, Kitchens sent Coleman a form informing him he had "topped out" and was only eligible for a two percent raise. In fact, this was not true because he was eligible for a larger raise.
 ¶ 6. In March of 1996, Kitchens sent a memorandum to his supervisor concerning Coleman's workload, but the memorandum failed to reflect that he had been assigned 300 new property claims. Four witnesses, all of whom had worked in the Jackson/Ridgeland office, testified that this assignment of 300 additional claims was a difficult, or even impossible burden to place on an employee. Coincidentally, at approximately the same time, Mississippi suffered a series of hail and wind storms, and this too, added additional work to Coleman's assignments.
 ¶ 7. On June 13, 1996, Gloria Hanna, one of the witnesses who testified to the reasonableness of assigning the 300 claims to Coleman, found a memorandum locked inside her desk. She had no knowledge of how it came to be there. The memorandum was written by Kitchens and stated his opinion that neither she nor Coleman was suitable for promotion, and that Coleman should be demoted two steps. Kitchens had never discussed this assessment with Coleman, despite the fact that Kitchens had been rated as "promotable" in his annual performance reviews during the previous six years.
 ¶ 8. Coleman believed that Kitchens was trying to "set him up" to fail, and that Kitchens was deliberately trying to terminate his employment. Due to the extraordinary amount of stress on the job, Coleman noticed the toll it was taking on him and his family. In response, he went to his family physician, in part because he was concerned about his blood pressure, and asked for a psychiatric referral. Ultimately on July 22, 1996, he saw Dr. Webb, who diagnosed and treated him for depression.
 ¶ 9. Dr. Webb told Coleman to take off from work on July 22, 1996, and prescribed anti-anxiety and antidepressant medication. Subsequently, Kemper terminated Coleman's employment. However, the date and reason for Coleman's termination are somewhat clouded. Coleman testified that he was terminated on February 12, 1997. Yet, the parties stipulated that Coleman was terminated in October of 1997, but reinstated and was still employed by Kemper on January 21, 1998. Nevertheless, during the hearing which was conducted on February 27, 1998, the parties indicated Coleman was no longer employed, and Kemper does not deny that it involuntarily terminated Coleman at some point in time. Coleman took a position with American Federated Insurance Company, on May 27, 1997, and never returned to work for Kemper after his doctor's prescribed leave. *Page 1123 
 ¶ 10. On June 16, 1997, Coleman filed a motion to controvert alleging that he received a work related injury known as mental-mental, which is a major depression resulting from an emotional stimulus. Kemper denied compensability. Subsequently, there were administrative proceedings held on February 27, 1998, and May 27, 1998, to adjudicate a mental injury claim against Kemper on behalf of Coleman. The administrative law judge entered an order which held that Coleman received a compensable work-related psychiatric injury on or about June 16, 1996, as alleged in the petition to controvert. The administrative law judge determined:
 Coleman's illness was the unexpected result of an untoward event, and unusual occurrence — or sequence of extraordinary events and occurrences — that was more than the ordinary incident of employment, more than the ordinary wear and tear of life in the workplace. Mr. Coleman was overworked, overloaded with files, and expected by cold administrators to do the near impossible while — without private personal discussion — was being passed over for promotability status in spite of fifteen plus years of good service to the company and a history of excellent performance appraisals. Psychologically he could not bear what was happening, and he suffered a medically documented "nervous" injury that his treating psychiatrist unequivocally connected to job stress. The administrative Judge finds by clear and convincing evidence that the resulting psychiatric/psychological disability arose out of and in the course of Mr. Coleman's employment and that there was direct causal connection between Mr. Coleman's employment experience and his injury.
(emphasis added).
 ¶ 11. She also ruled that Coleman did not receive permanent occupational work injury and ordered that temporary total disability benefits be paid beginning the first day of Coleman's prescribed leave until June 1, 1997, and assessed penalties on all due and unpaid compensation benefits. On September 8, 1999, the Full Commission affirmed the order of the administrative law judge.
 ¶ 12. The Full Commission's order was amended by an order dated September 29, 1999, to provide that the employer/carrier is entitled to credit against the award of temporary total disability benefits for thirteen weeks of non-occupational disability benefits paid to Coleman by the employer from July 22, 1996, through October 20, 1996. The Circuit Court of Madison County affirmed the Full Commission's order. From this affirmance, Coleman and Kemper now appeal.
 ANALYSIS AND DISCUSSION OF THE ISSUES 1. Evaluative Standard and Sufficiency of the Evidence ¶ 13. Although Kemper asserts three issues in its statement of the issues, the discussion in its brief of the second issue concerns additional medical testimony which was not a part of the record before the Commission but which Coleman seeks to have us consider as a part of his cross-appeal. In our discussion of the issues, we have recast and consolidated Kemper's first two issues into one. We discuss the additional medical testimony as issue number two.
 ¶ 14. Kemper asserts that the Commission and the circuit court erred by applying an incorrect legal standard when the finding was reached that the evidence presented in this case was sufficient to establish by clear and convincing evidence that his mental injury arose from or related to *Page 1124 
some "untoward event or unusual occurrence" or was caused by "more than the ordinary incidents of employment." Specifically, Kemper contends that the Commission erred when it approved the finding of the administrative law judge that "whether or not the employer intended to make life extraordinarily difficult for Richard Coleman is not relevant." It is Kemper's contention that a finding of some type of intent or deliberate conduct is required for compensability of this claim under Mississippi law. Although Kemper contends the Commission's utilized an incorrect legal standard, Kemper's argument is in actuality an assertion that intent to injury on the part of the employer is an element of a mental-mental injury.
 ¶ 15. We turn now to our long-recognized standard of review which is that the factual findings of the Commission are binding on the appellate court so long as they are supported by substantial evidence.Hedge v. Leggett Platt, Inc., 641 So.2d 9, 12 (Miss. 1994). An appellate court will reverse an order of the Commission only when such order is clearly erroneous and contrary to the overwhelming weight of the evidence. Id. However, appellate courts use a de novo standard of review when passing on questions of law. ABC Mfg. Corp. v. Doyle, 749 So.2d 43
(¶ 2) (Miss. 1999). "Generally an administrative agency is accorded deference, but when the agency has misapprehended a controlling legal principle, no deference is due." Id., citing Smith v. Jackson Constr.Co., 607 So.2d 1119, 1125 (Miss. 1992). "If there is substantial evidence to support the Commission, absent an error of law, this Court must affirm." Smith, 607 So.2d at 1125.
 When a worker seeks compensation benefits for disability resulting from a mental or psychological injury, he must not only prove a (1) disability that is (2) work-related, but also, (3) and . . . to be compensable, a mental injury, unaccompanied by physical trauma, must have been caused by something more than the ordinary incidents of employment.
Borden, Inc. v. Eskridge, 604 So.2d 1071, 1073 — 74 (Miss. 1992) (citing Fought v. Stuart C. Irby Co., 523 So.2d 314, 318 (Miss. 1988).
 ¶ 16. Mississippi law allows compensability for mental nervous situations not caused by physical trauma. Brown Root ConstructionCompany v. Duckworth, 475 So.2d 813, 815 (Miss. 1985). In such cases, a claimant must prove the connection between the employment and the injury by clear and convincing evidence. Fought, 523 So.2d at 317. In addition, the law requires "that the injury be related to some `untoward event, unusual occurrence,' accident or injury incident to employment."Duckworth, 475 So.2d at 815. "Untoward event" and "unusual circumstances" can be defined as an injury incident to employment caused by something more than the ordinary incident of employment. Bates v. CountrybrookLiving Ctr., 609 So.2d 1247, 1248 (Miss. 1992). In general, where the claim is based upon a mental or nervous disease, it is viewed with the normal suspicion attending claimed disabilities which have no physical cause traceable to objective findings, and the burden of proof, which rests upon the claimant, is greater than in ordinary cases. In Smith andSanders, Inc. v. Peery, 473 So.2d 423, 425 (Miss. 1985), the court noted the only exception to the traditional rule of liberal construction of the Act and specifically held that layoffs and terminations cannot be characterized as unusual occurrences or untoward events when such are rightful or based upon economic reasons.
 ¶ 17. In this case, the specific events that happened to Coleman included: (a) the assignment of 300 claims which, *Page 1125 
according to the testimony of various witnesses, was an unreasonable assignment, (b) the memorandum, inexplicably left on a co-worker's desk, that contained statements to the effect that Kitchens wanted to demote Coleman despite the fact that Coleman had good job performance evaluations in his previous six annual performance evaluations (Coleman was never told of Kitchens's desire to demote him), (c) the admittedly false statement by Kitchens that Coleman was not eligible for a five percent raise, and (d) the series of hail and wind storms that dramatically increased Coleman's normal workload. Given our deferential standard of review to factual matters, this Court cannot say the Commission erred in finding these events arose out of Coleman's employment and were a "sequence of extraordinary events and occurrences — that was more than the ordinary incidents of employment, more than the ordinary wear and tear of life in the workplace." Therefore, there is no merit to Kemper's assertion that Coleman suffered merely the ordinary incidents of employment. Although Kemper asserts that a deliberate attempt by the employer to injury must be proven, our review of Mississippi's case law reveal no such requirement, and Kemper has cited no authority specifying such a requirement. This assignment is without merit.
 2. The New Medical Testimony ¶ 18. In his notice of cross-appeal, Coleman included as one of his two issues information regarding new medical evidence given by Dr. Webb, his medical expert, in collateral litigation. In testimony before the Commission, Dr. Webb had not found that Coleman suffered any permanent disability. However, in the collateral litigation, the expert found that Coleman suffered a twenty-five percent permanent disability.
 ¶ 19. Following the filing of his notice of cross-appeal, Coleman filed a motion to supplement the record on appeal to include this new opinion by Dr. Webb. Kemper has filed a motion to strike from Coleman's cross-appeal the issue concerning the new medical testimony. Coleman's motion is presently pending before this Court pursuant to an order entered on April 4, 2001, by Justice Waller of the Mississippi Supreme Court. We now address the merits of the motion to allow supplementation of the record to include this new evidence.
 ¶ 20. Mississippi Rules of Appellate Practice 10 (e) provides that this Court "may" grant a motion to supplement the record, if the record contains an "omission or misstatement." We do not consider this evidence an omission. Therefore, Coleman's motion to allow supplementation is overruled. Furthermore, we decline to consider evidence not considered by the Commission as such would be improper and beyond our authority on appeal. However, we note that Coleman could have petitioned the Commission to consider this evidence. The Mississippi Workers' Compensation Act allows a party to petition the Commission to review a compensation case, issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation, at any time prior to one year after date of last payment of compensation. Miss. Code Ann. § 73-3-53 (Rev. 2000). If the time has not expired, Coleman may still petition the Commission.
 3. Imposition of Penalties and Awarding of Interest ¶ 21. Kemper contends that the administrative law judge's imposition of penalty and award of interest along with the Full Commission's and circuit court's affirmance is contrary to the overwhelming *Page 1126 
weight of evidence. Although Coleman advances that this issue was not properly preserved for the purpose of appeal, Kemper prays for this relief in the lower court. Kemper argues that Coleman already received non-occupational disability benefits and long term disability benefits during the entire period for which the administrative judge awarded temporary total disability benefits from July 22, 1996 through June 1, 1997; therefore, it should not be penalized for not paying under the requirements of Mississippi Code Annotated Section 71-3-37 (Rev. 2000).
 ¶ 22. Mississippi Code Annotated Section 71-3-37 (Rev. 2000), provides:
 If any installment of compensation payable without an award is not paid within fourteen (14) days after it becomes due, as provided in subsection (2) of this section, there shall be added to such unpaid installment an amount equal to ten percent (10%) thereof, which shall be paid at the same time as, but in addition to, such installment unless notice is filed under subsection (4) of this section, or unless such nonpayment is excused by the commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.
 * * * * If any installment payable under the terms of an award is not paid within fourteen (14) days after it becomes due, there shall be added to such unpaid installment an amount equal to twenty percent (20%) thereof, which shall be paid at the same time as, but in addition to, such compensation unless review of the compensation order making such award is had.
Miss. Code Ann. § 71-3-37(5) (6) (Rev. 2000).
 ¶ 23. Three conditions are set forth in South Central Bell v.Aden, 474 So.2d 584, 597 (Miss. 1985), which allow an employer of right to claim relief from the burden of the penalty: (1) the employer has paid compensation installments within fourteen days of when they became due, (2) the employer has filed a notice to controvert within fourteen days of the day he received notice of the injury, (3) that nonpayment, if it occurred, was as a result of conditions over which the employer had no control. More important, the supreme court has determined that an employer can avoid statutory penalties in circumstances where the employer has paid claimant payments via a company benefit plan within the fourteen days of when statutory payments were due. Id.
 ¶ 24. Kemper began payments to Coleman for salary continuation beginning on the date of injury, July 22, 1996, through October 20, 1996, and long term disability benefits from October 21, 1996, through December 31, 1997. Therefore, Kemper can avoid statutory penalties because it had paid Coleman within fourteen days, as required by the statute. Thus, we reverse on this issue.
 CROSS-APPEAL 1. Denial of Permanent Disability Benefits ¶ 25. Coleman asserts that the Commission erred in denying permanent disability benefits. There are two factual bases for this assertion. First, Coleman asserts that the medical testimony in the record shows he suffered a permanent impairment. Second, Coleman asserts that he suffered a functional loss by virtue of a loss of income. Coleman earned $58,292 per year with Kemper at the time he suffered the compensable injury, but after reaching maximum recovery and after the temporary disability ceased, he was making *Page 1127 
only $39,400 per year with his new employer, a difference of $18,892 or $363.30 per week.
 ¶ 26. Dr. Webb's medical testimony concerning a permanent impairment was, "I do feel that with the extraordinary pressure that [Coleman] went though, that the permanent effects will be [his] skittishness about work, his ability to trust future bosses. Those are the two big areas. The ability to trust his future employer." However, Dr. Webb declined to assign a permanent disability rating to Coleman. It was this testimony that the Commission relied upon in denying Coleman permanent partial benefits. The administrative law judge found:
 Mr. Coleman has not sustained a permanent occupational disability because of the work injury. Dr. Webb assigned no psychiatric restrictions but simply said that Mr. Coleman would probably always have skittishness about work and an inability to trust future bosses. This Administrative Judge would call that within the realm of normal, healthy skepticism about life in any workplace. That Kemper eliminated Mr. Coleman's position is not indicative of a loss of wage-earning capacity or permanent occupational disability. There were many changes at Kemper in 1997, both nationally and locally, and in an employment-at-will state the employer need not keep a position available for an employee. Mr. Coleman continues to have excellent credentials, intellectual capabilities, work history, and work skills, and Dr. Webb's testimony would indicate no significant psychiatric impairment beyond the date of maximum medical improvement.
As stated, the Commission affirmed the findings of the administrative law judge. Factual findings of the Commission are affirmed if supported by evidence. Metal Trims Indus. Inc. v. Stovall, 562 So.2d 1293, 1297
(Miss. 1990). Given this standard of review and the medical evidence offered, this Court finds no error in the Commission's finding that Coleman suffered no permanent mental impairment.
 ¶ 27. Coleman further asserts that as a consequence of Kemper's actions that led to his mental injury, he has suffered losing a job that paid $58,292 per year and has only been able to find employment paying $39,400 per year. However, regardless of a change in income, there must be some ongoing injury to justify an award of permanent benefits. Miss. Code Ann. § 71-3-7 (Rev 2000). A determination of permanent injury must be premised upon medical evidence. Dunn, MISSISSIPPI WORKERS COMPENSATION § 76, (3d ed. 1990). In this case, the Commission found that Coleman failed to prove the element of permanent mental injury. Such a determination is a finding of fact, and subject to the familiar discretionary review given to factual findings. See Hale v. RulevilleHealth Care Ctr., 687 So.2d 1221, 1228 (Miss. 1997); Mid-Delta HomeHealth, Inc. v. Robertson, 749 So.2d 379, 386 (¶ 27) (Miss.Ct.App. 1999). Given this standard of review, this Court can find no error in the denial of permanent benefits based on a change in income. This issue is also without merit.
 2. Application of Incorrect Legal Standard ¶ 28. Coleman asserts that in cases involving mental injuries, the "preponderance of the evidence," rather than the heightened "clear and convincing evidence," burden of proof should be utilized. Additionally, he asserts the use of the heightened burden has no basis in law, and thus the line of cases applying the heightened burden should be overruled. Coleman urges this Court to disregard the *Page 1128 
well-established case law which requires a "clear and convincing" evidence standard to be utilized in mental-mental cases. Earlier in this opinion, we have stated that the proper standard of review, as established by the Mississippi Supreme Court, is "clear and convincing." Fought,523 So.2d at 317 (Miss. 1988). For this reason, this issue lacks merit.
 ¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY ISAFFIRMED ON THE ISSUES OF TEMPORARY AND PERMANENT INJURIES AND REMANDEDTO THE MISSISSIPPI WORKERS COMPENSATION COMMISSION FOR DETERMINATION OFSTATUTORY PENALTIES. THE APPELLANTS ARE ASSESSED ALL COSTS OF THISAPPEAL.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., BRIDGES, THOMAS, LEE, MYERSAND CHANDLER, JJ., CONCUR. BRANTLEY, J., NOT PARTICIPATING.