**Christal BAILEY, et al., Plaintiffs**

v.

**LOCKHEED MARTIN CORPORATION and Lockheed Martin Aeronautical Systems Company, Defendant.**

**Civil Action No. 4:04CV124LN.**

United States District Court, S.D. Mississippi, Eastern Division.

Aug. 26, 2005.

---

William E. Ready, Ready & Associates, Meridian, MS, C. Michael Quinn, Wiggins, Childs, Quinn & Pantazis, Llc, Birmingham, AL, Helen Elizabeth Swartzfager, Robert A. Pritchard, Law Office of Robert A. Pritchard, Pascagoula, MS, for Plaintiffs.

Daniel E. Turner, Nancy E. Rafuse, Ashe, Rafuse & Hill, Llp, David M. Zacks, Joseph H. Huff, Thomas H. Christopher, William H. Boice, Kilpatrick Stockton, Llp, Atlanta, GA, David L. Ayers, J. Collins Wohner, Jr., Mark D. Jicka, Robert B. Ireland, III, Watkins & Eager, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Defendant Lockheed Martin Corporation (Lockheed) has filed in this case (1) a motion for summary judgment as to all plaintiffs physically assaulted based on the exclusive remedy provision of the Workers' Compensation Law; and (2) a motion for dismissal, or alternatively, for summary judgment as to all plaintiffs not physically assaulted. Although plaintiffs have submitted responses to both motions, they have also moved to stay consideration of the motions and for an extension of time to respond to the motions pursuant to Federal Rule of Civil Procedure 56(f), contending that discovery is needed before they will be in a position to fully respond to the motions. For the reasons that follow, the court concludes that plaintiffs' request to stay should be denied, and both of Lockheed's motions should be granted.

This lawsuit is one of many arising out of a tragic incident that occurred at the Lockheed Martin facility in Meridian, Mississippi on July 8, 2003 when Douglas Paul

Williams, a longtime employee of Lockheed Martin, went on a shooting rampage at the Lockheed plant, in which he shot numerous co-workers, killing seven and wounding others. It appears from the allegations of plaintiffs' complaint that on that date, Williams, who was well known by his co-workers and by Lockheed management to harbor extreme racial hatred toward his African–American co-workers, arrived at the plant with firearms in his truck. While attending a mandatory training course being held in a building on plant grounds, Williams exited the building shortly after the training session began, retrieved a shotgun and Mini–14 semiautomatic rifle, and then reentered the building where the training course was being held and opened fire, shooting at least five persons. He then left that building and entered the main plant building, where he shot the remaining victims following which he took his own life with a self-inflicted gunshot wound.

In this lawsuit, there are forty-six plaintiffs. Two of the plaintiffs, Christine Bailey and Kevin Bailey, seek to recover damages on account of the wrongful death of Delois Bailey, who was shot and killed by Williams in his violent rampage. Plaintiffs Bradley Bynum and Henry Odom were shot by Williams but survived. and seek recovery for their injuries. Their wives, Dorothy Odom and Rebecca Bynum, assert claims for loss of consortium. The claims of these six plaintiffs are the subject of Lockheed's motion for summary judgment as to all plaintiffs physically assaulted.

Lockheed's motion for dismissal or summary judgment as to the claims of all plaintiffs not physically assaulted is directed to the claims of the remaining forty plaintiffs. Of those, five make claims for injuries sustained while attempting to exit the Lockheed plant at the time of

Williams' rampage, including John Bowden, Richard Burrows, Mark Haggard, Christopher Nause and Gloria Ruffin. Twenty-seven plaintiffs claim damages for emotional distress suffered as a result of the shooting. Of those, twenty-four were at the plant when the shootings occurred, namely, Tommy Bailey, Warren Brookshire, Oscar Coleman, Sylvester Conley, Sayle Johnson, Jr., Bryant Jones, Joseph Kaulfers, James Kornagay, Donald Lloyd, Larry McCoy, Linda McCoy, Mike Melton, Cathy Mumford, Houston Neal, Mark Quinn, Zebbie Scott, Jeffrey Shelton, Dennis Smith, Thomas Spadt, Luke Steele, Booker Steverson, Tony Thompson, Wallace Wilson and Melvin Young. The other three, Harlan Crowther, Fred Dozier and Walter Lewis, while employees of the plant, were not present on the day of the shooting. Finally, eight of the plaintiffs are spouses of employees, who assert claims for loss of consortium, including Cheryl Bowden, Wendy Burrows, Roxan Haggard, Barbara Bailey, Marsha Brookshire, Karen Kaulfers, Sandra Spadt and Kristina Thompson.

Lockheed seeks summary judgment as to the claims of all plaintiffs physically assaulted based on the exclusive remedy provision of the Workers' Compensation Law. It requests summary judgment as to the claims of the plaintiffs who were not physically assaulted on this same basis, and also on the basis that they have no viable claim for tort liability in any event.

In another case involving the same incident, this court denied a similar summary judgment motion by Lockheed premised on the exclusivity of the workers' compensation remedy. *Tanks v. Lockheed–Martin Corp.*, 332 F.Supp.2d 953 (S.D.Miss. 2004). This court, being of the opinion that it could not definitively determine from the record that the injuries occurred

"because of" the victim's employment, denied that motion. An interlocutory appeal ensued, and the Fifth Circuit reversed. *Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 2005 WL 1652216 (5th Cir.2005).

The issue presented for the Fifth Circuit's consideration was whether the death of Thomas Willis, the Tanks plaintiff's decedent, "from the intentional shooting at the hands of a co-worker while both were at work, is compensable under the [Workers' Compensation] Act." *Id.* at 4. The Fifth Circuit concluded it was. Citing *Miller v. McRae's Inc.*, 444 So.2d 368 (Miss.1984), the court explained that where the injury at issue is the result of the intentional act of a co-worker, then if such injury is compensable under the Act, and in particular Mississippi Code Annotated § 71–3–3(b) which defines compensable injury, the exclusivity bar applies. To determine whether such an intentional act is encompassed within the Act's definition of compensable injury, the court asks

> whether it was "an injury caused by [1] the willful act [2] of a third person [3] directed against an employee [4] because of his employment [5] while so employed and working on the job ..." A "third person," ... includes a co-worker who is not acting in the course and scope of his employment and in furtherance of the employer's business.

*Id.* (citing *Miller*). The court concluded there was "no question that three of the five *Miller* elements [were] satisfied in this case: Williams's actions were (1) intentional and (2) directed at Willis (3) while Willis was 'so employed and working on the job.'"

*Id.* It also concluded that "Williams' actions were outside of the course and scope of his employment and must therefore be characterized as the acts of a third person." Id. at 5 (stating by way of explanation that "[a]n intentional violent assault on a co-worker is quite obviously neither committed as a means of accomplishing the purposes of the employment nor of the same general nature as authorized conduct. None can seriously question that, for purposes of the MWCA, Williams's shooting spree was the act of a third person outside the course and scope of his employment.").

Finally, the court concluded that the record supported no conclusion other than that Willis's injuries were suffered "because of" his employment. As to that issue, the Fifth Circuit, recognizing that "[i]njuries or death caused by the malicious and intentional acts of a third party are compensable if they are inflicted 'because of' the employee's employment," *id.*, emphasized that the nexus "requires a showing of minimal causation: only 'a rational connection [between] employment and injury' is necessary". *Id.* (further stating that the MWCA applies "[w]hen even a tenuous relationship between an employee's job and an intentional injury inflicted by a third party exists."). The court did not hesitate in concluding that the requisite relationship existed: "Tanks's allegations leave no doubt that Willis's injury, like those of other co-workers, resulted in principal part because of his longstanding employment alongside Williams," so that "the actions of the assailant, Williams, 'were directed against his victims "because of their employment."'" *Id.* at 6. The court elaborated, stating:

> Specifically, Willis was on the job, at the exact time and place that his employment required him to be there; he was not violating any instructions in performing his job. All relevant allegations in Tanks's complaints demonstrate that the assailant's actions resulted from his ever-increasing and uncontrollable resentment that he was forced by Lock-

heed to work with, around, and under African American co-workers. Thus, Tanks's allegations are more than sufficient to establish the required minimal causal nexus between Willis's injuries and his employment. Indeed, she is likely judicially estopped from claiming otherwise on appeal.

In contrast, Tanks's complaints are devoid of any allegations that Williams ever acted out of racial animus anywhere other than at work.

. . .

*Id.* The court found that it could reach no conclusion other than that the intentional acts of this third-party employee were indisputably directed against another employee (actually, several employees, black and white) because of his employment. Under these overwhelming facts, the only viable conclusion is that, regardless of the ethnicity of the victims, Williams's acts of shooting cannot be separated from the employment status of his victims. Again, Tanks's pleadings are devoid of allegations that Williams ever acted out against blacks elsewhere in the community-not in stores or bars or restaurants or schools or playing fields or anywhere except the workplace. His rampage was undeniably triggered by his uncontrollable anger at being forced to work, day after day, year after year, with co-workers who were African Americans. We would turn a blind eye to reality if we were to conclude that Williams's willful acts were directed at most of these targets solely because they were black and not at all because they were longtime co-workers who were black (and white). They were shot because they were African American co-workers or white co-workers (supervisors who were enforcing Lockheed's equal opportunity employment practices).

*Id.* at 7.

Insofar as Williams' actions (and motivations) are concerned, plaintiffs' allegations in the case at bar are practically indistinguishable from those in *Tanks* such that the Fifth Circuit's conclusion in *Tanks* is inescapable here.

■ However, as in *Tanks*, plaintiffs offer an alternative basis for concluding that they are not relegated to the Workers' Compensation Act for their recovery, namely that Lockheed Martin's own intentional acts caused plaintiffs' injuries, so as to remove the exclusivity bar. *See Griffin v. Futorian Corp.*, 533 So.2d 461 (Miss. 1988) (setting forth intentional tort exception to exclusivity rule).

Plaintiffs submit that Lockheed acted intentionally within the contemplation of the intentional tort exception in that it had ample knowledge of Williams' intense hatred of his African–American co-workers, of specific threats of violence against those same co-workers and of his propensity to bring weapons onto the premises, and yet it did nothing to address the problem created by Williams.[1] The court need not dwell long on this argument.

---

1. Plaintiffs summarize their position in their response brief, as follows:

Lockheed supervisory personnel knew with certainty of Williams' racial hatred and of his menacing threats toward African–American and other employees. In their capacity as managers, they chose to pursue a course of action toward Williams which indicated that they were comfortable with and supported his behavior toward these employees. The supervisors condoned his continuing hostility, intimidation and his threats in a way that shows they implicitly encouraged it, so much so that in their managerial capacity they effectively adopted or ratified his actions and consciously supported them to act for them in menacing, intimidating and threatening

In *Tanks*, the court addressed Tanks' similar allegation as follows:

Plaintiff's contention that Thomas Willis's death was caused by Lockheed–Martin's "intentional" failure to protect Willis is grounded on her allegation that Lockheed–Martin took no action to protect Willis and his co-workers even though it was keenly aware that the assailant, Williams, was an emotionally disturbed individual who was consumed with racial hatred, and knew that Williams desired to inflict harm against his black co-workers and knew that Williams routinely brought loaded guns in his truck to work.

Plaintiff's assertion that Lockheed–Martin's failure to act for Willis's protection in the face of all this information is properly considered an "intentional" tort so that the exclusivity bar is inapplicable finds no support in the law. The Mississippi Supreme Court has consistently held that "[A] mere willful and malicious act is insufficient to give rise to the intentional tort exception to the exclusive remedy provisions of the Act". There must be a finding of an "actual intent to injure." Reckless or grossly negligent conduct is not enough to remove a claim from the exclusivity of the Act. *Peaster v. David New Drilling Co.,* 642 So.2d 344, 348, 349 (Miss.1994). *Blailock v. O'Bannon,* 795 So.2d 533, 537 (Miss.2001); see *also Peaster v. David New Drilling Co. .,* 642 So.2d 344, 348, 349 (Miss.1994) (holding that "in order for a willful tort to be outside the exclusivity of the Act, the employee's action must be done 'with an actual intent to injure the employee.").

Around the same time this court issued its opinion in *Tanks,* the Mississippi Court of Appeals decided *Thornton v. W.E. Blain & Sons, Inc.,* 878 So.2d 1082, 1086 (Miss.Ct.App.2004), where it wrote quite clearly on this issue, stating:

Thornton also urges this Court to adopt the "substantial certainty" standard, which allows an injured worker to circumvent the exclusivity provision of the Workers' Compensation Law in those instances where the employer engages in misconduct knowing that death or serious injury is "substantially certain to occur." *Woodson v. Rowland,* 329 N.C. 330, 407 S.E.2d 222, 228 (1991). As Blain points out, the Mississippi Supreme Court already has declined to

these employees. One effect was to embolden him even further. A very real effect was that his hostility, intimidation and threats became their hostility, intimidation and threats. This was a regular method of managing the workforce. The supervisory personnel as manager adopted this course of action of consciously allowing Williams to carry out the dirty work for them without their fingerprints showing up. In so doing, the supervisory personnel were acting in their managerial capacity in the course and scope of their employment and subject to the control of Lockheed.

Due their knowledge [sic] of the nature and depth of Williams' racial hatred and threats toward African–American and other employees, the supervisory personnel knew or were charged with knowledge, or both, that it was only a matter of time before Williams resorted to the type harmful [sic] action that occurred on July 8, 2003. The facts show that they were substantially certain that Williams, unrestrained, would carry out his threats of harm. . . .

Second, Lockheed's supervisory personnel, acting in the course and scope of their managerial capacity for Lockheed and subject to Lockheed's control, chose to pursue a course of action with Williams that, in law, is an intentional tort, amounting to an intent to injure the plaintiffs. This is so because Lockheed, with detailed knowledge of the history of Williams and his actions and threats at the workplace over an extended period of time . . . chose to pursue a course of supporting and not controlling Williams, that was substantially certain to cause the harm that befell the plaintiffs.

create a "substantial certainty" exception to the exclusivity provision of the Act, stating:

> There is nothing novel about the approach suggested by the appellants of enlarging the scope of the exemption test. We have stated consistently our position on this issue. The legislature has had every opportunity to include into the Act such a liberal exception suggested by the appellants, yet failed to do so. If this Court were to include what the legislature did not, we would violate the "purpose, spirit and philosophy of the Workmen's Compensation Act."

*Peaster v. David New Drilling Co., Inc.,* 642 So.2d 344, 349 (Miss.1994) (quoting *Brown v. Estess,* 374 So.2d 241, 242 (Miss.1979)).

Although plaintiffs herein attempt to distinguish their claims from those in *Tanks* by reference to the allegations in their complaint, which they submit are much more specific and illuminating as to the facts supporting a conclusion that Lockheed's actions were "intentional," or sufficiently deliberate to be deemed intentional under the law, nothing they have alleged or argued even arguably supports the conclusion that Lockheed had the requisite "intent to injure." Mississippi law is clear: An employer does not act with an "intent to injure" if he knows only that an injury is "substantially certain" to result from his actions or his failure to act. To be deemed intentional, his acts or inaction must be designed to bring about the injury. *See Peaster,* 642 So.2d at 349–350 ("The employer's conduct may have been reckless, negligent, or grossly negligent, but that is not enough to remove this case as an 'intentional tort' from the exclusivity of the Workers' Compensation Act. This Court has held repeatedly that the employer's action must be done 'with an actual intent to injure the employee,' and that 'an intentional tort is an act of intentional behavior designed to bring about the injury.' ").

Here, notwithstanding plaintiffs' best efforts, no amount of artful characterization by plaintiffs in their attempt to avoid the exclusivity bar can transform conduct that may well have been grossly negligent or reckless into the kind of "intent to injure" needed to avoid the bar.[2] From this, it follows that Lockheed's motion for summary judgment is well taken as to the claims of all those plaintiffs who were physically assaulted.[3]

■ The same result is also in order as to the claims of those plaintiffs who were not physically assaulted. To reiterate, some of these plaintiff employees claim they sustained physical injuries in their attempt to exit the building at the time of the shootings. Other employee plaintiffs claim emotional distress from witnessing the shooting and from viewing the bodies of the dead and wounded in the aftermath of the shooting. And still other employee plaintiffs, though not present when the shootings occurred, claim emotional injury

2. Plaintiffs have moved pursuant to Rule 56(f) to stay consideration of Lockheed's motions for summary judgment until they have had an opportunity for discovery in an effort to gather evidence to support their allegations regarding Lockheed's actions and inactions which allegedly led to the incident at the plant. The fact is, however, that no amount of discovery will change the fact that Lockheed's alleged actions and inactions, though they may have had a causative effect, were not intentional within the contemplation of the law. No purpose would therefore be served by the requested discovery.

3. Of course, the claims of the spouses for loss of consortium, being derivative claims, are barred for the same reason. *See Byrd v. Matthews,* 571 So.2d 258, 259 (Miss.1990).

for their emotional distress upon learning of the incident.

Although Williams' intentional conduct may not have been specifically directed toward any of these employees, it nevertheless is manifest that their injuries are claimed to have resulted from his intentional acts, and accordingly, their claims, which are undeniably employment-related, are barred to the same extent as the claims of those who were physically assaulted.[4]

■ The claims of the plaintiffs who allege emotional injury from witnessing the incident, as well as those who suffered emotional injury as a result of later learning of the incident, even if not subject to the exclusivity bar, would be barred for the additional reason that theirs are not viable tort claims in any event.

Although they assert otherwise, these plaintiffs are suing for injuries as "bystanders." The criteria one must meet on a claim of emotional trauma by a bystander are "(1) Whether the plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it; (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after the occurrence; (3) Whether the plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Entex, Inc. v. McGuire*, 414 So.2d 437, 444 (Miss.1982). In *Satchfield v. R.R. Morrison & Son, Inc.*, 872 So.2d 661, 667 (Miss.2004), the Mississippi Supreme Court held that bystander liability extends only to injury to a close relative. Here, the injured workers were merely these plaintiffs' co-workers, and not their close relatives. They thus have no claim for bystander liability.

Plaintiffs argue that they are not suing as mere bystanders, but are suing for the direct injury to them, likening their position to that of the plaintiff in *O'Cain v. Harvey Freeman and Sons, Inc. of Mississippi*, 603 So.2d 824 (Miss.1991), who sued her landlord for the emotional trauma she suffered when a burglar broke into her apartment and raped her roommate in the next room. The Mississippi Supreme Court agreed that O'Cain had no viable bystander claim, but determined that she was not suing as a bystander. The court explained, "She makes no claim based on the actual witnessing of the event. In essence, her emotional problems stem from the fact that her apartment and roommate were violated." *Id.* at 830. Here, in contrast, the plaintiffs are suing because they witnessed this traumatic event, and not because they were themselves violated in any way, other than being in proximity to harm.[5] And as the court made clear in *Satchfield*, that will

---

4. Although they make no specific argument on the point, in their response brief, plaintiffs allude to the possibility that their claims may not be compensable under the Workers' Compensation Act. However, emotional or mental injuries are compensable under the Workers' Compensation Act if it is shown by clear and convincing evidence that there is a "connection between the employment and the injury" and, in the case of emotional injury not caused by physical trauma, " 'that the injury [is] related to some "untoward event, unusual occurrence," accident or injury incident to employment,' " which is defined as "an injury incident to employment caused by something more than the ordinary incident of employment." *Kemper Nat. Ins. Co. v. Coleman*, 812 So.2d 1119, 1124 (Miss.Ct.App.2002). Both requirements are obviously satisfied here.

5. Some of them were not even in proximity to harm and obviously have no claim for recovery.

not suffice to state a claim for bystander recovery.[6]

For all of the foregoing reasons, it is ordered that both of Lockheed's pending summary judgment motions are granted, and plaintiffs' motion to stay is denied.

SO ORDERED.

**6.** They also argue that *Satchfield* considered only claims of negligent conduct, and not conduct that was intentional. However, the facts do not support an allegation that Lockheed intentionally caused these plaintiffs emotional distress with respect to the incident of July 8, 2003.