980 So.2d 360 (2008)
Annie C. DANIELS, Appellant/Cross-Appellee
v.
PECO FOODS OF MISSISSIPPI, INC., Appellee/Cross-Appellant.
No. 2007-WC-00634-COA.
Court of Appeals of Mississippi.
April 22, 2008.
*362 Al Chadick, attorney for appellant.
Stephen J. Carmody, Christopher Ray Fontan, Jackson, attorneys for appellee.
Before LEE, P.J., BARNES and ISHEE, JJ.
LEE, P.J., for the Court.

FACTS
¶ 1. In June 2001, Annie C. Daniels was at work at Peco Foods, Inc., in Canton, Mississippi when a plastic bag of frozen chicken parts fell from a conveyor line onto her head. She testified that she was wearing a scarf, a hair net, and a jacket hood on her head when the bag struck her. She stated that her head bled for a minute, and there was a frost-like substance on her head, which she washed off in the bathroom sink. She reported the incident to her supervisor who gave her two aspirins before she returned to work on the conveyor line. She did not miss any work and did not communicate any further with Peco Foods about the incident.
¶ 2. The day after the accident, Daniels went to the doctor complaining of tightness in her chest, hair loss, redness and a dull, burning pain on her scalp. She was diagnosed with bronchitis. She returned to her doctor in August 2001 complaining of headaches and hair loss. She was referred to Dr. Joseph Robinson, a dermatologist. Dr. Robinson diagnosed her with alopecia and psoriasis. Daniels did not seek treatment again for her scalp until June 2003 when she was seen by dermatologist Dr. Beau Burrow. She complained of a work-related scalp burn that caused her to lose her hair. Dr. Burrow performed a scalp biopsy and diagnosed Daniels with discoid lupus erythematosus. He found the hair loss and scarring to be a permanent condition.
¶ 3. Daniels continued to work at Peco Foods without incident until December 2001 when she slipped and fell in the plant breaking her right arm. She was taken to the emergency room and underwent surgery on the arm several months later. She did not return to work at Peco Foods. The compensation that she received due to this injury is not disputed on appeal.
¶ 4. In April 2003, Daniels was hospitalized for "depression and suicidal ideation." Her medical history provided that she had suffered a chemical accident which resulted in loss of hair and scalp disfiguration and that she had been depressed ever since the accident. She also told doctors that her imaginary friend told her she was ugly without her hair, and she should kill or physically harm herself. The doctors believed that Daniels's suicidal tendencies had subsided and released her. Daniels was instructed to follow up at a mental-health center. Daniels followed up with Dr. James Brister who diagnosed Daniels with depression and post-traumatic stress disorder from the loss of her hair. He opined that she could not return to work as of April 2005.

PROCEDURAL HISTORY
¶ 5. Daniels filed two separate petitions to controvert against Peco Foods, alleging that she suffered a work-related scalp injury and arm injury and alleging that these injuries resulted in psychological or mental injury. Peco Foods admitted that benefits were owed for the arm injury, but it denied that benefits were owed for the scalp injury and psychological or mental injury. *363 A hearing was held before an administrative law judge (ALJ) who ruled that Daniels had suffered two physical injuries on the job and that her psychological condition was related to her work injuries. Peco Foods appealed the decision of the ALJ to the Mississippi Workers' Compensation Commission (Commission). The Commission agreed with the ALJ's finding that Daniels suffered two work-related physical injuries. However, the Commission reversed the decision of the ALJ as to the psychological or mental injury. The Commission found that Daniels failed to meet her burden of proving a causal connection between her physical injuries and her disabling mental condition. Daniels appealed the Commission's decision regarding her psychological condition to the Circuit Court of Madison County. The circuit court affirmed the decision of the Commission.
¶ 6. Daniels now appeals asserting the following issue: the Commission's finding was not supported by substantial evidence and the law. Peco Foods cross-appeals, asserting that the Commission erred in finding that Daniels suffered a compensable injury to her head or scalp in June 2001.
¶ 7. Finding no error, we affirm.

STANDARD OF REVIEW
¶ 8. The standard for appellate review of workers' compensation claims is limited. It is well settled that "the Commission is the ultimate fact-finder." Hardin's Bakeries v. Harrell, 566 So.2d 1261, 1264 (Miss.1990). Our review is limited to a "determination of whether or not the decision of the commission is supported by the substantial evidence." McCarty Farms, Inc. v. Banks, 773 So.2d 380, 386 (¶ 23) (Miss.Ct.App.2000) (quoting Delta CMI v. Speck, 586 So.2d 768, 772-73 (Miss.1991)). "An appellate court will reverse an order of the Commission only when such order is clearly erroneous and contrary to the overwhelming weight of the evidence." Kemper Nat'l Ins. Co. v. Coleman, 812 So.2d 1119, 1124 (¶ 15) (Miss. Ct.App.2002). "However, appellate courts use a de novo standard of review when passing on questions of law." Id.

DISCUSSION
I. DID THE COMMISSION USE THE PROPER STANDARD OF REVIEW FOR A MENTAL INJURY FOLLOWING A WORK-RELATED PHYSICAL INJURY?
¶ 9. Daniels asserts on appeal that the Commission used an improper standard, "clear and convincing evidence," in reviewing her psychological condition. She argues that the proper standard for her to establish, by "clear evidence," was a causal connection between her work-related physical injury and her mental injury.
¶ 10. To recover benefits for a mental injury suffered after a physical injury, a claimant must prove that the disabling mental injury "was caused, contributed to, or aggravated by a work-related physical injury." Kirk v. K-Mart Corp., 838 So.2d 1007, 1010 (¶ 17) (Miss.Ct.App. 2003). If the injury is unaccompanied by physical trauma, the claimant "must prove by clear and convincing evidence that [he or] she suffer[ed] from a disabling mental injury which was either caused, contributed to or aggravated by some unusual occurrence or untoward event in order to be compensable." Id.; Miss.Code Ann. § 71-3-3(b) (Rev.2000). "[A] claimant asserting that a mental or nervous disease has resulted from an industrial accident must show the causal connection between the accident and the psychoneurosis by clear evidence." Miller Transporters, Ltd. v. Reeves, 195 So.2d 95, 100 (Miss.1967).
*364 ¶ 11. In reviewing Daniels's claim, the Commission stated, "[i]t is well established that the connection between employment, and an allegedly disabling mental condition, must be proved by clear and convincing evidence." See Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988) ("when a claimant seeks compensation benefits for disability resulting from a mental or psychological injury, the claimant has the burden of proving by clear and convincing evidence the connection between the employment and the injury"). Daniels asserts that she was incorrectly held to the higher "clear and convincing" burden of proof, which is reserved for mental injuries that are unaccompanied by a physical injury. Daniels argues that since her mental injury was the result of a physical injury, her burden was to simply prove, by clear evidence, a causal connection between the mental and physical injury.
¶ 12. Since the Commission stated the incorrect burden of proof, which is an error of law, this Court cannot give the normal deference to the Commission and must review this issue de novo. Coleman, 812 So.2d at 1124 (¶ 15). In finding no causal connection between the mental and physical injury, the Commission made two specific findings. First, the Commission found Dr. Brister's testimony suspect because he gave an opinion of Daniels's mental health without reviewing any prior medical records and was unaware of her past psychological problems and treatment. Second, the Commission found that any connection between Daniels's employment at Peco Foods and her mental problems was tenuous at best since Daniels had worked for another employer since quitting Peco Foods and did not seek help for several years after the physical injury. After conducting a review of the record, we agree that this evidence makes finding a connection between the mental and physical injury difficult.
¶ 13. Daniels argues that her mental-health issues were solely attributable to her two work-related injuries. She testified that she did not miss any work due to depression or other psychological impairment and suffered no psychological problems until she was admitted to a psychiatric unit in April 2003. However, when Daniels initially sought treatment for her scalp in June 2001, she responded "yes" to a question on the intake form asking whether she had prior nervous or emotional problems.
¶ 14. During her hospitalization in a psychiatric unit in April 2003, Daniels was diagnosed with depression and psychosis, which were found to have been likely caused from sleep deprivation and high intake of caffeine over a long-term basis. After approximately a week of hospitalization, Daniels was discharged from the psychiatric unit and began follow-up treatments with psychiatrist Dr. Brister. Daniels told Dr. Brister that her depression was due to a lack of self-esteem caused by her hair loss and the scarring to her scalp from a work-related injury. After several visits, Dr. Brister diagnosed Daniels with depression and post-traumatic stress disorder. He found that the loss of hair and scarring from the injury to her scalp, along with the arm injury, were significant contributing factors in the development of her condition.
¶ 15. We note that Dr. Brister, despite testifying to the importance of reviewing a patient's medical records, did not review Daniels's medical history except for a dermatology report from Dr. Burrow. Dr. Brister's treatment and diagnosis were based solely on the history provided by Daniels. In September 2003, Daniels was seen by Dr. Mark Webb for an independent medical evaluation. Daniels related *365 to Dr. Webb a history of panic attacks and treatment for panic attacks in the 1980s. Daniels also told Dr. Webb that she was prescribed psychiatric medication in the 1990s. She also related emotional problems due to a series of deaths in her family, a brother who committed suicide, and an abusive husband. She later denied making these statements to Dr. Webb. The Commission, sitting as the fact-finder, found convincing Dr. Webb's testimony that Daniels's psychiatric issues pre-existed the December 2001 fall at work. Dr. Webb found that the incident exacerbated her pre-existing depression, but she suffered "no permanent psychiatric impairment or restrictions as a result of the 12/12/01 incident." He further found that Daniels was not psychiatrically disabled and returning to work would do her "real well."
¶ 16. Dr. Webb testified that a complete history, going back as far as childhood, is critical in diagnosing and determining the cause of mental illness. Dr. Webb did not agree with Dr. Brister's diagnosis of post-traumatic stress disorder. Dr. Webb could not find the hair loss and scarring traumatic enough to qualify for this diagnosis. Daniels argues that the Commission erred in finding Dr. Webb's testimony more credible. She argues that since Dr. Brister was her regular treating physician, his testimony carried greater weight than other physicians when resolving conflicts of opinion. Again, the Commission heard the testimony of both doctors and, after weighing the evidence, found Dr. Webb's testimony to be more persuasive. The Commission provided clear reasons for finding Dr. Brister's testimony to be suspect. As the finder and trier of fact, it is the Commission's job to evaluate and weigh the evidence. Sibley v. Unifirst Bank for Sav. ex rel. Resolution Trust Corp., 699 So.2d 1214, 1219 (¶ 24) (Miss.1997).
¶ 17. After conducting a de novo review of the record, we find substantial evidence existed to support a finding that Daniels failed to prove, by clear evidence, a causal connection between the mental injury and physical injuries she suffered at work. We find this issue to be without merit.
II. DID THE COMMISSION ERR IN FINDING THAT DANIELS'S SCALP INJURY WAS WORK RELATED?
¶ 18. Peco Foods cross-appeals, asserting that the Commission erred in awarding Daniels compensation for the alleged scalp injury. It asserts that Daniels failed to show that the discoid lupus erythematosus, which the experts agreed caused the hair loss and scarring, bore a causal connection to the on-the-job injury.
¶ 19. Peco Foods argues that the testimony of Daniels's medical expert, Dr. Burrow, only established the possibility of a connection between her scalp injury and discoid lupus. It also points out that Dr. Burrow conceded that the exact cause of this condition is unknown, but it is most likely an inherited condition triggered by exposure to the sun. Dr. Burrow testified that the scalp condition could also be caused by exposure to dry ice, in sufficient amounts, directly on the skin.
¶ 20. Peco Foods' medical expert, Dr. Webb, agreed with Dr. Burrow that the most likely cause of Daniels's hair loss and scarring was discoid lupus. However, Dr. Webb testified that discoid lupus is a rheumatic illness and not caused by injury or stress. Dr. Webb testified that the theory that the bag of frozen chicken parts packed in dry ice caused Daniels's scalp condition was "not plausible." Peco Foods also argued that Daniels's scalp was protected by three layers of clothing when the bag fell on her head. Also, Peco Foods asserts the dry ice, which allegedly caused *366 the damage to Daniels's scalp, was inside a sealed plastic bag.
¶ 21. To support its finding that the scalp injury was compensable, the Commission stated:
Dr. Burrow offered a credible, albeit belated, opinion that her hair loss and scalp condition probably was caused by the June 2001 accident at work. There is, in fact, no credible explanation to the contrary, and neither Ms. Daniels'[s] history nor Dr. Burrow's opinion have been shown to be incredible or unreliable.
¶ 22. Given that the Commission is the ultimate fact-finder, and there is no explanation to the contrary, we find the Commission's decision was supported by substantial evidence. We find Peco Foods' cross-appeal to be without merit.
¶ 23. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS AFFIRMED ON DIRECT AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND APPELLEE.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.