JAMES, J.,
for the Court:
¶ 1. Doris McMullen-Anthony appeals the Mississippi Workers’ Compensation Commission’s decision that she suffered no compensable injury to her cervical spine as a result of her work at Tecumseh Products Company. McMullen-Anthony argues that the Commission’s order was not based on substantial evidence and was arbitrary and capricious. Finding no error with the Commission’s decision, we affirm.
FACTS
¶ 2. McMullen-Anthony began working for Tecumseh, a manufacturing company, in 1994. McMullen-Anthony’s first position at Tecumseh was in housing'transfer, and she worked there from 1994 to 2004. McMullen-Anthony testified that the housing-transfer position required her to take parts off a conveyor line that came from her right side at a waist-high level. McMullen-Anthony would add components to these parts and would then reach up with. her left arm and place parts on a hook hanging from a second conveyor line. Tecumseh removed McMullen-Anthony from this position in 2004 because of shoulder pains.
¶ 3. Tecumseh switched her to a light-duty position building loose parts from about 2004 until 2009. This position required her to retrieve loose parts from her right and place those parts on a machine located on a shelf to her left side, which would then bag the loose parts. Once the parts were bagged, they would go into a tray, and she would hang that tray on a rack. According to McMullen-Anthony, this position required her to turn her head down and to the left, but the pace was deliberate and not hurried. McMullen-Anthony had surgery on the left shoulder on March 31, 2009. Dr. Chad S. Altmyer performed the surgery. McMullen-Antho-ny was also in a car accident in March 2009, a few weeks before she had the shoulder surgery.
¶ 4. McMullen-Anthony returned to work on July 16, 2009. McMullen-Antho-ny worked in two different positions after she returned, both light duty. She was *1187 assigned to the “oil line,” and this position involved her wiping oil off compressors as they came down the line, using her right arm only. The second position was described as a label-making position, and this involved her attaching bar-coded labels to compressor parts as they came down a conveyor line.
¶ 5. MeMullen-Anthony’s first complaints of neck pain were directed to Dr. Altmyer because McMullen-Anthony thought it was because of her left shoulder. Dr. Altmyer referred McMullen-Anthony to Dr. Timothy Bassett for a cervical evaluation. Dr. Bassett testified that he reviewed an MRI dated August 30, 2010, which showed degeneration at C5-6 and C6-7. It was Dr. Bassett’s opinion that McMullen’s Anthony’s condition was caused by her working on the assembly line for seventeen years. According to Dr. Bassett, McMullen-Anthony explained that she had to engage in an upward and leftward neck rotation. Additionally, Dr. Bassett localized the date of injury to sometime between April and August 2010. Dr. Bassett recommended surgery to address McMullen-Anthony’s cervical problems.
¶ 6. An employer medical examination of McMullen-Anthony was conducted by Dr. Sam Murrell, an orthopaedic spine specialist, on April 8, 2013, in relation to this claim. Dr. Murrell examined the pri- or notes from Drs, Altmyer, Massey, and Bassett.[1] Dr. Murrell took a history from McMullen-Anthony, during which he noticed she was uncertain of her dates. Dr. Murrell also performed a physical examination of McMullen-Anthony. Lastly, he viewed a video of the jobs she performed at Tecumseh from 1994 to 2004 and from 2004 to 2009,[2]
¶ 7. Dr. Murrell agreed that McMullen-Anthony had degenerative changes at C5-6 and C6-7, but he disagreed that she was a surgical candidate, noting that he did not find any cervical radiculopathy. Additionally, he noted that she did not seem to be in any significant distress and that she had not had any conservative treatment, specifically physical therapy. Furthermore Dr. Murrell determined that there was nothing to suggest that .the findings on her MRI scan were caused by employment at Tecu-meseh. After viewing the videos for the job she performed from 1994 to 2004 and from 2004 to 2009, Dr. Murrell stated that he could not conclude with medical certainty that these activities caused her aggravated degenerative disc disease of the cervical spine. Furthermore, he determined that the motor-vehicle accident she was involved in could have been just ’as likely to have contributed to or aggravated a preexisting degenerative disc disease.
PROCEDURAL HISTORY
¶ 8. On October 11, 2011, McMullen-Anthony filed a claim against Tecumseh and alleged the June 25, 2010 injury to her neck, cervical spine, and left-upper extremity arose from repetitive, cumulative trauma and micro-traumas that were secondary to her work. This particular claim was one of five pending before the Commission against Tecumseh. This claim was consolidated with two of the other claims that were pending.
*1188 ¶ 9. A hearing was held before an AJ. The AJ found that Dr. Bassett’s medical opinions were based upon a misunderstanding of McMullen-Anthony’s work history. The AJ' found that based upon the videos entered into evidence and McMul-len-Anthony’s testimony, the housing-transfer position she held from 1994 until 2004 was the only position with the physical requirements matching those McMul-len-Anthony provided to Dr. Bassett. Because Dr. Bassett relied heavily upon the incorrect work history provided by McMullen-Anthony in forming his medical opinion, that opinion was flawed.
¶ 10. The AJ also reviewed the medical report of Dr. Murrell. Dr. Murrell reviewed a video, provided by Tecumseh, which demonstrated the job positions McMullen-Anthony held from 1994 until 2004 and 2004 until 2009. In Dr. Murrell’s opinion, McMullen-Anthony’s cervical condition was not related to her employment at Tecumseh.
¶ 11. The AJ found that the housing-transfer position performed by McMullen-Anthony from 1994 until 2004 was the only position that could arguably coincide with the history provided to Dr. Bassett. McMullen-Anthony had performed this job for only ten years out of the seventeen-year history provided to Dr. Bassett. Since the only medical opinion relating the cervical condition to McMullen-Anthony’s employment was flawed, the AJ held that McMullen-Anthony failed to meet her burden of proof. The full Commission affirmed and adopted the order of the AJ on January 6, 2015.
STANDARD OF REVIEW
¶ 12. This Court’s review of workers’ compensation claims is limited to determining whether the Commission erred as a matter of law or made findings of fact contrary to the overwhelming weight of the evidence. Daniels v. Peco Foods of Miss., 980 So.2d 360, 363 (¶ 8) (Miss.Ct.App.2008). We review matters of law de novo, and reversal is proper if the Commission has misinterpreted the controlling legal principles. Whittle v. Tango, 168 So.3d 1157, 1160 (¶ 15) (Miss.Ct.App. 2014). “Absent an error of law, we must affirm the Commission’s decision if there is substantial evidence to support the Commission’s decision.” Id. (citation omitted).
DISCUSSION
¶ 13. To establish a prima facie case of disability, the claimant bears the initial burden of showing by a preponderance of the evidence: “(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the ... claimed disability.” City of Jackson v. Sandifer, 125 So.3d 681, 688 (¶ 27) (Miss.Ct.App.2013). Unless common knowledge suffices, the claimant must prove a causal connection between the employment and the injury with medical evidence through expert testimony. Howard Indus. v. Robinson, 846 So.2d 245, 259 (¶ 49) (Miss.Ct.App.2002). “The medical evidence is sufficient if it supports, even if it does not fully prove, a finding of disability.” Id. (citation omitted).
¶ 14. McMullen-Anthony argues that the Commission’s order was not only not based on substantial evidence but was also arbitrary and capricious. Specifically, McMullen-Anthony argues that she gave Dr. Bassett the required information regarding her work duties and that Dr. Bas-sett, on that basis, established a causal connection between McMullen-Anthony’s work and her cervical disc degeneration and the need for surgery. Essentially, McMullen-Anthony suggests that the AJ should have disregarded the fact that Dr. Bassett’s opinion was based on an incom- *1189 píete understanding of her work history. In support of this argument, McMullen-Anthony asserts that: (1) she was in the best position to provide a description of her job as she performed it, (2) she provided an ample description of that performance to Dr. Bassett, and (3) her testimony about how she performed her job was not rebutted or contradicted at the hearing.
¶ 15. After reviewing the record, we find no merit to this argument. The record shows that based on the history McMullen-Anthony gave Dr. Bassett he understood McMullen-Anthony to have worked one assembly-line position that required the constant turning of her head and constant reaching up and to the left for seventeen years. Dr. Bassett also determined that the car accident most likely did not have any effect on McMullen-An-thony’s neck because she did not complain of neck trouble until over a year later. Dr. Bassett concluded that the advanced degenerative arthritis in her neck was due to “repetitive micro-trauma” to her neck over those seventeen years on the job. Although we know that McMullen-Antho-ny did not work that one position for seventeen years, the record shows that Dr. Bassett believed otherwise when he determined the injury was work related. In Dr. Bassett’s deposition taken October 4, 2011, he stated:
Yeah. I think she said she worked at a station where she had to reach over and turn leftward, and lot of this was up and left, up and left, constant in that direction. And it was maybe taking something from here and bringing it down in front of her, that back and forth to that. And I think they switched her off to the right side on her lighter duty. But that kind of forcing the extension, neck up, turning left, hard left, 90-degree left, and then repetitively doing that would be consistent with this degenerating over years and years of it.
[[Image here]]
As she described to me working there 17 years, doing that job, yes.
[[Image here]]
Yeah. It’s 17 years of that. Sure.
¶ 16. It is obvious that Dr. Bassett understood McMullen-Anthony to have worked one job for the entire seventeen years she worked at Tecumseh, and no one corrected that error. But contrary • to McMullen-Anthony’s assertion, Tecumseh did not have a duty to correct that error. Dr. Bassett was McMullen-Anthony’s expert witness, and the burden fell on McMullen-Anthony to ensure that her expert witness’s opinion was not based on a faulty assumption.
¶ 17. Moreover, in cases involving conflicting expert evidence, the Mississippi Supreme Court has held that ‘“whenever the expert evidence is conflicting, the [appellate] court will affirm the Commission whether the award is for or against the claimant.” Tex. Gas Transmission Corp. v. Dabney, 919 So.2d 1079, 1086 (¶ 28) (Miss.Ct.App.2005) (citation and quotation marks omitted). The Commission is the fact-finder, and this Court will not reverse its decision unless its decision is clearly erroneous. Id.
¶ 18. The record supports the Commission’s decision. Dr. Bassett did not have a clear understanding of McMullen-Antho-ny’s work history and, therefore, could not offer a valid opinion on a causal connection between McMullen-Anthony’s neck complaint and work. See Fresenius Med. Care v. Woolfolk, 920 So.2d 1024, 1032 (¶ 33) (Miss.Ct.App.2005). Dr. Bassett’s flawed opinion combined with Dr. Muller’s negative opinion supports the finding that McMullen-Anthony did not meet her burden of proof. Therefore, we find no error in the Commission’s determination that the medical evidence was insufficient to sus *1190 tain McMullen-Anthony’s claim of a com-pensable work-related injury.
¶ 19. Furthermore, while MeMullen-Anthony argues the Commission’s decision was erroneous because Tecumseh “muddied the waters” by showing Drs. Bassett and Muller the DVDs, we recognize that the burden to establish the elements of a claim for workers’ compensation benefits falls on MeMullen-Anthony, not Teeum-seh. MeMullen-Anthony failed to meet this burden. We therefore agree with the finding of the Commission that MeMullen-Anthony failed to prove that she suffered an injury to her cervical spine arising out of and in the course of her employment at Tecumseh. We find this issue to -be without merit.
¶ 20, THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.

. The medical records and reports of Dr. Mitchell Massey were not admitted into evidence. At the hearing the parties stipulated that McMullen-Anthony did see Dr. Massey for her left-shoulder pain before seeing Dr. Altmyer.

, The administrative judge (AJ) was unsure if Dr. Murrell watched the same DVDs that were admitted at the hearing. This question was posed to Jeffrey Leathers, the employer/carrier’s counsel, several weeks prior the order, but the AJ never received an answer.