642 So.2d 344 (1994)
Vennie PEASTER, Natural Mother and Administratrix of the Estate of Jimmy Wilcoxson, Deceased; Brenda Wilcoxson Tacker, Vanessa Wilcoxson, Sheila Wilcoxson Vaughn (Buazard), and Kimberly Wilcoxson Blount
v.
DAVID NEW DRILLING CO., INC.
No. 91-CA-00423.
Supreme Court of Mississippi.
May 12, 1994.
Rehearing Denied September 29, 1994.
Wayne E. Ferrell, Jr., Karla J. Pierce, Ferrell & Hubbard, Jackson, for appellant.
Kenneth G. Perry, Shell Buford Bufkin Callicutt & Perry, Jackson, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
SMITH, Justice, for the Court:
This appeal arises from an incident where decedent, Jimmy Wilcoxson, was assisting in moving a portable oil rig belonging to his employer, David New Drilling Co. Inc. The rig shifted and Wilcoxson was crushed to death. His family filed a wrongful death suit against his employer and four other third party defendants in The First Judicial District of Hinds County Circuit Court.
The appellants in their complaint specifically referred to the negligence of David New Drilling and never raised facts supporting the commission of an intentional tort by the employer towards Wilcoxson.
David New Drilling filed its answer, asserting as an affirmative defense that the action was barred by the exclusivity provisions of the Workers' Compensation Act. Miss. Code Ann. § 71-3-9 (1972, as amended). Subsequently, appellees filed a Motion for Summary Judgment based on the identical *345 grounds. The circuit court, Honorable Fred Banks presiding, overruled without prejudice David New Drilling's motion for summary judgment pending further discovery. Following completed discovery by both parties and further consideration, Judge Banks granted summary judgment in favor of David New Drilling and a final judgment was entered by Judge Robert Gibbs on March 20, 1991. Aggrieved, Wilcoxson's heirs appeal to this Court assigning the following as error:
I. PLAINTIFFS' CAUSE OF ACTION AGAINST DAVID NEW DRILLING FALLS WITHIN THE INTENTIONAL TORT EXCEPTION TO THE EXCLUSIVE REMEDY PROVISIONS OF THE WORKMEN'S COMPENSATION ACT.
II. IN THE ALTERNATIVE, THIS COURT SHOULD RECOGNIZE AN EXCEPTION TO THE EXCLUSIVE LIABILITY PROVISION WHERE THE EMPLOYER HAS KNOWINGLY PERMITTED HAZARDOUS CONDITIONS TO EXIST WHICH ARE SUBSTANTIALLY CERTAIN TO RESULT IN INJURY OR DEATH.
After careful scrutiny of the record, we agree with the findings of Judge Banks. The appellants' claims are essentially that David New Drilling failed to maintain the brakes in good repair on the truck and trailer involved in the accident. These allegations in the complaint refer to the negligence of David New Drilling and not to an intentional tort. The appellants allege nothing that would remove this case from the exclusive remedy provisions of the Workers' Compensation Act.
The appellants urge this Court to apply the exception to the exclusive liability provision of the Act. This argument is not original to the appellants but rather has been suggested for consideration on many occasions. Regardless, in the case sub judice, the appellants failed to plead or present evidence that would bring them within the exception, if recognized by this Court. We must affirm the trial judge.

THE FACTS
On September 7, 1984, eighteen-year-old Jimmy Wilcoxson was working at the well site known as Armstrong "WP" Well No. 1 near Sibley, Adams County, Mississippi. Wilcoxson, an employee of David New Drilling Co. Inc. since July 16, 1984, had worked at this particular rig since August 30, 1984.
Wilcoxson, a "roustabout", had normal duties including "painting, cleaning, spraying grass, etc." On the day of the accident he was assisting in "rigging down" a drill rig manufactured by Spenser-Harris Machine & Tool Co. and owned by David New Drilling. The rig was being moved because of a "dry hole." To move the rig to a different site, the 85,000 pound drill rig, supported by a trailer, is lowered by a hydraulic jack onto a fifth wheel located on the bed of a truck.
According to the appellants, Wilcoxson was instructed by his supervisor to place himself between the drill rig's goose neck and the rear end of the truck, in order to connect the fifth-wheel pin to the truck. During the course of the rig being lowered onto the trailer bed by the hydraulic jack, the drill rig shifted and caused the trailer to move forward. The engaged brakes on the trailer gave way and Wilcoxson was pinned between the trailer and the rear of the truck. Appellants maintain the brakes did not work. Wilcoxson died approximately an hour and a half later.
Jimmy Wilcoxson was in the course and scope of his employment at the time of the accident and his death. David New Drilling furnished workers' compensation insurance coverage for its employees and paid Wilcoxson's funeral and medical expenses and satisfied its obligations under the Workers' Compensation Act.
The appellants are the heirs of Jimmy Wilcoxson. On October 30, 1987, they filed a complaint in the First Judicial District of Hinds County Circuit Court against David New Drilling and four other third party defendants alleging inter alia that David New Drilling intentionally, willfully and in a grossly negligent manner caused the death of Jimmy Wilcoxson. Defendant Futrex Petroleum, Inc. was the owner of the well site. Defendant Spencer Harris Machine & Tool *346 Company was the manufacturer of the porta rig which was owned by David New Drilling, Inc. and which was being "down rigged" when the accident occurred. Defendants R.W. Delaney Construction Company, Royal Trucking Company and David New Drilling, Inc., according to the appellants, were the owners of the vehicles being utilized in the "down rigging" when the accident occurred. The appellants sought actual and punitive damages. The lawsuit against Spencer Harris Machine & Tool Company was settled for a substantial sum of money. David New Drilling answered and denied liability.
David New Drilling subsequently filed a Motion for Summary Judgment, asserting the exclusive remedy of the Workers' Compensation Act. The appellants' counsel submitted an affidavit to which were attached the investigative reports of the Occupational Safety and Health Administration (OSHA), which showed numerous violations of OSHA regulations. The Circuit Court, Judge Fred Banks presiding, initially overruled the motion without prejudice on June 17, 1988, to allow for further discovery. After complete discovery by both parties and further consideration, the Circuit Court granted the Motion for Summary Judgment. The order granting summary judgment was signed by Judge Banks on June 2, 1989, and the final judgment entered by Judge Robert Gibbs on March 20, 1991.

DISCUSSION

I.

PLAINTIFFS' CAUSE OF ACTION AGAINST DAVID NEW DRILLING FALLS WITHIN THE INTENTIONAL TORT EXCEPTION TO THE EXCLUSIVE REMEDY PROVISIONS OF THE WORKMEN'S COMPENSATION ACT.
In order to avoid the exclusivity of the Workers' Compensation Act, this Court has set out the two elements that must be met:
(1) the injury must be caused by the willful act of the employer or another employee acting in the course of employment and in the furtherance of the employer's business, and
(2) the injury must be one that is not compensable under the act.
Griffin v. Futorian Corp., 533 So.2d 461, 463 (Miss. 1988), citing Miller v. McRae's Inc., 444 So.2d 368, 371-372 (Miss. 1984).
In the complaint it was alleged that David New Drilling "willfully" disregarded its duties to Jimmy Wilcoxson, "intentionally" failed to repair the brakes on the tractors and trailers, acted with "gross and reckless disregard for the rights and safety of the public in general and particularly of Plaintiffs' decedent" and with "knowledge of substantial certainty of injury." Despite these allegations, the overwhelming language and facts point to negligence, including gross negligence.
The appellants cite to several cases in other jurisdictions for the proposition that the facts presented justify an inference of actual intent on the part of David New Drilling to injure Wilcoxson and thus the case should have been submitted to a jury.
In McNees v. Cedar Springs Stamping Co., 184 Mich. App. 101, 457 N.W.2d 68 (1990), the plaintiff offered proof that the employer had actual knowledge that an injury was certain to occur at the press machine operated by the plaintiff and that the employer nevertheless instructed the plaintiff to operate the press. Subsequent to the accident, the employer destroyed all the defective foot pedals in the shop. The Michigan court held that summary judgment for the employer was improperly granted and that the allegation if proved would amount to "willfully forcing an employee to work in the face of a known and certain danger with respect to the specific machine that caused the accident." Id. 457 N.W.2d at 70. Under Michigan law, if the employer had actual knowledge that injury was certain to occur and willfully disregarded that knowledge, the employer was deemed to intend injury.
In another case, Gulden v. Crown Zellerbach Corp., 890 F.2d 195 (9th Cir.1989), the plaintiffs alleged that their employer ordered them to scrub the floors of the employer's mill without protective clothing after a transformer failure that released toxic levels of polychlorinated biphenyls (PCBs) onto the floor of the mill and after attempts to reduce *347 the PCB level to non-toxic had been unsuccessful. The employees later discovered that they had acquired body levels of PCBs which were hazardous to their health.
The court held that "a jury could conclude that the intent to injure ... was deliberate where the employer had an opportunity to weigh the consequence and to make a conscious choice among possible courses of action." Id. at 196-197. While noting that the exception to the exclusivity of the workers' compensation statute should be strictly construed, the court went on to say that this bar would not apply where "the evidence is sufficient to support an inference the employer deliberately instructed an employee to injure himself." Id. at 197.
The appellants have also cited Mandolidis v. Elkins Ind., Inc., 161 W. Va. 695, 246 S.E.2d 907 (1978), as support. That court consolidated three cases for consideration. Mandolidis was injured operating a 10-inch table saw not equipped with a safety guard. The employer had actual knowledge of the consequences of running the machine without a guard because of previous injuries as a result of a lack of the guard. It was well known that running the machine without the guard constituted a violation of federal and state safety laws and accepted industry standards. Mandolidis had objected to operating the saw without the guard and was told to operate it or be fired. After Mandolidis' injury, federal inspectors cited the employer for OSHA violations because there was no guard.
In the second consolidated case, Snodgrass was injured when the platform he was working on became dislodged causing him to fall. Alleged were violations of numerous safety laws, rules and regulations and improper construction of the platform. The third case involved a Rule 12(b)(6) dismissal and is not relevant to this present case.
In the rebuttal brief, the appellants also cite Fyffe v. Jeno's, Inc., 59 Ohio St.3d 115, 570 N.E.2d 1108 (1991). The employee asserted that he was injured as a result of his employer deliberately removing a safety guard from a conveyer system which the employee was required to operate and which created a substantial risk of harm to the employee. The court noted that the Workers' Compensation statute that defined what constituted an intentional tort had been amended and, while the statute was not to be applied retroactively, it could be considered as a statement of public policy.
Each of the cases cited has clear differences from the present case. The employers had been forewarned that the hazard to which they were exposing the employee had a strong potential for or certainty of injury. In Gulden, the employer knew without a doubt that the employees would be injured by exposure to PCBs. In that case the court distinguished that situation from cases where the employee was injured by improperly maintained machinery or by a truck with defective brakes. Gulden, 890 F.2d at 197. In Fyffe and Mandolidis the deliberate removal of safety devices constituted evidence of the requisite intent to injure. As noted in McNees, where an employer allows a braking system to become defective, provides inadequate safety features on equipment and/or supplies inadequate braking material, this constituted negligence only, not an intentional tort. 457 N.W.2d at 69.
Mississippi cases also support the proposition that the present case does not come within any intentional tort exception to the rule. Griffin v. Futorian Corp., 533 So.2d 461 (Miss. 1988), involved a tort action by an employee against his employer for injuries while operating a large lumber machine saw in the course and scope of his employment. Griffin alleged that the employer "willfully, consciously and intentionally ordered him to continue working in and around those dangerous conditions which were substantially certain to cause grievous and horrible injuries." Id. at 463. Griffin alleged that he had warned the plant manager of the unsafe working conditions. This Court found that the action against the employer was barred by the exclusive remedy provisions of the Act. The Court stated:
Dunn, Mississippi Workmen's Compensation, (3d ed. 1982 & Supp. 1984), notes that in order for a willful tort to be outside the exclusivity of the Act, the employee's action must be done "with an actual intent to *348 injure the employee. It is not enough to destroy the immunity that the employer's conduct leading to the injury consists of aggravated negligence or even that the conduct goes beyond this to include such elements as knowingly permitting hazardous conditions to exist or willfully failing to furnish a safe place to work or knowingly ordering the employee to perform a dangerous job. [Footnote omitted]." Id. at § 22.
533 So.2d at 464.
Griffin absolutely bars an intentional tort claim even where the probability of gross negligence exists. Thus, in the case sub judice, even if the appellants could prove that David New Drilling was guilty of gross negligence, such a finding would remain insufficient to create an intentional tort and accordingly remove the appellants' claim from under the Workmens' Compensation Act. A mere willful and malicious act remains insufficient to give rise to the exception under the Act.
In Stevens v. FMC Corp., 515 So.2d 928 (Miss. 1987), the employee was injured when a small chip of metal broke off the four pound hammer he was using to place parts into conveyor rollers. The employee had been ordered to grind out the hammer heads once they became mushroomed, although this was against the manufacturer's warnings. The Court held that Stevens had only asserted a cause of action for negligence and was barred by the provisions of the Workers' Compensation Act.
In McCain v. Northwestern National Insurance Co., 484 So.2d 1001 (Miss. 1986); Luckett v. Mississippi Wood, Inc. and The Western Casualty and Surety Co., 481 So.2d 288 (Miss. 1985); and Southern Farm Bureau Casualty Insurance Co. v. Holland, 469 So.2d 55 (Miss. 1984), this Court recognized exceptions to the exclusivity of the Act but only when based on tortious conduct subsequent to the work place injury. These cases involved bad faith refusal to pay benefits.
Other instances in which this Court has found an intentional tort claim are also clearly different from the present case. See Royal Oil Co., Inc. v. Wells, 500 So.2d 439 (Miss. 1986) (common law claims of alleged intentional torts allowed based on malicious prosecution, false imprisonment, false arrest and slander of a convenience store cashier on embezzlement charges which were "no billed" by the grand jury) and Miller v. McRae's, Inc., 444 So.2d 368 (Miss. 1984) (intentional tort claim allowed for claim of false imprisonment where employer used threats of force to detain a cashier to question her about missing funds).
Looking at the facts alleged in the light most favorable to the appellants, there is no evidence which establishes that the employer acted "with actual intent to injure." At most, the employer was guilty of gross negligence. There is no support for finding that this case involved an intentional tort and is outside the exclusive remedy of the Workers' Compensation Act. The appellants have not successfully shown that they can meet the first part of the test outlined in Miller that there was "a willful or malicious act of the employer."
The appellants also fail in meeting the second part of Miller. In each of the cases where this Court has allowed a claim for intentional tort, the injury has been something other than physical injury or death, which are compensable under the Act. The appellants have not shown that the relief they are seeking is not of the kind for which compensation is normally granted under the Act.
This assignment of error is without merit.

II.

IN THE ALTERNATIVE, THIS COURT SHOULD RECOGNIZE AN EXCEPTION TO THE EXCLUSIVE LIABILITY PROVISION WHERE THE EMPLOYER HAS KNOWINGLY PERMITTED HAZARDOUS CONDITIONS TO EXIST WHICH ARE SUBSTANTIALLY CERTAIN TO RESULT IN INJURY OR DEATH.
The appellants urge this Court to "consider enlarging the scope of the intentional tort exception to include those acts which consist of the employer willfully permitting hazardous conditions to exist which are substantially certain, although perhaps not specifically *349 intended, to result in the injury or death of an employee." The appellants reference cases from Ohio which have adopted the meaning of "intent" set out in the Restatement, Second of Torts, Section 8A (1965). This same definition was urged on the Court in Stevens, 515 So.2d at 930-931:
Mr. Stevens advances no novel argument of the definition of "intentional". Rather he submits that the definition contained in the Restatement, Second of Torts should control. Section A of the Restatement states:
The word, "intent" is used throughout the Restatement of this subject denotes that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result in it.
In Stevens, the Court in addition to applying the definition of intent from the Restatement also held that "an intentional tort is an act of intentional behavior designed to bring about the injury." 515 So.2d at 931, citing Mullins v. Biglane Operating Co., 778 F.2d 277, 279 (5th Cir.1985). See also, Southern Farm Bureau Casualty Insurance Co. v. Allard, 611 So.2d 966, 968 (Miss. 1992). The appellant had argued that the construction of the Act "be sensible as well as liberal." 515 So.2d at 930, citing McCluskey v. Thompson, 363 So.2d 256, 259 (Miss. 1978).
In addition to this Court having already considered the definition of intent from the Restatement, as urged by the appellants, the standard adopted by the Ohio court would not help in the present case. In Van Fossen v. Babcock & Wilcox Co., 36 Ohio St.3d 100, 522 N.E.2d 489 (1988), paragraph 6 was modified to read:
To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he has in fact desired to produce the result. However, the mere knowledge and appreciation of a risk  something short of substantial certainty  is not intent.

570 N.E.2d at 1112. (emphasis added.)
What the appellants propose is not particularly new or inconsistent with the previous decisions of this Court. As noted, this Court has previously considered the Restatement's interpretation of intent. The problem is that the allegations of the complaint and all evidence before the lower court fall far short of the substantial certainty which is required. The employer's conduct may have been reckless or grossly negligent, but this is not enough to remove this case from the exclusivity of the Workers' Compensation Act.
The appellants have not persuasively shown that a more liberal interpretation is warranted. There is nothing novel about the approach suggested by the appellants of enlarging the scope of the exemption test. We have stated consistently our position on this issue. The legislature has had every opportunity to include into the Act such a liberal exception suggested by the appellants, yet failed to do so. If this Court were to include what the legislature did not, we would violate the "purpose, spirit and philosophy of the Workmen's Compensation Act". Brown v. Estess, 374 So.2d 241, 242 (Miss. 1979). This issue is without merit.

CONCLUSION
The circumstances of this most unfortunate death of Jimmy Wilcoxson could possibly have been avoided or substantially reduced by his employer, David New Drilling. The employer's conduct may have been reckless, negligent, or grossly negligent, but that this not enough to remove this case as an "intentional tort" from the exclusivity of the Workers' Compensation Act. This Court has held repeatedly that the employer's action must be done "with an actual intent to injure the employee," and that "an intentional tort is an act of intentional behavior designed to *350 bring about the injury." We do not today choose to expand this Court's interpretation of what constitutes an intentional tort exception. Even had we elected to so enlarge the scope of the intentional tort exception, the appellants are not entitled to relief.
We affirm the granting of Summary Judgment by the trial judge in favor of David New Drilling.
JUDGMENT AFFIRMED.
HAWKINS, C.J., and DAN M. LEE and PRATHER, P.JJ., and PITTMAN and JAMES L. ROBERTS, Jr., JJ., concur.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, J.
BANKS, J., not participating.
McRAE, Justice, dissenting:
Nearly a decade ago, Jimmy Wilcoxson was crushed to death in an accident which occurred in the course of his employment with David New Drilling Co. Clearly, Workers' Compensation has not been the "quick fix" it was intended to be either for Wilcoxson's heirs or his employer. To add to the confusion, delay and inequity which has plagued our system of compensating on-the-job injuries, to the detriment of employers as well as workers, the majority now has thrown another curve in finding that gross negligence does not amount to an intentional tort. Because it defies logic to adopt a standard distinct from that employed, for example, in determining whether there is a basis for an award of punitive damages, I respectfully dissent.
In Miller v. McRae's, Inc., 444 So.2d 368 (Miss. 1984), we noted that "it was never the intention of the Workmen's Compensation Act to bar an employee from pursuing a common law remedy for an injury that is the result of a willful and malicious act." Id. at 371. Where there is a question of whether workers' compensation is the exclusive remedy available to the claimant, the Miller Court articulated a two-part test; that is, "one must ask not only whether the injury arose out of and in the course of employment, but also, whether the injury is compensable under the Workmen's Compensation Act." Id. at 372, overruling Rico v. Precision Engineering and Manufacturing Co., 381 So.2d 170 (Miss. 1980) (considering only whether injury arose out of course of employment). Thus the issue is whether the circumstances surrounding Jimmy Wilcoxson's death are such that they transcend the definition of compensable injury articulated in Miss. Code Ann. § 71-3-3(b) (1989 and Supp. 1993).
The majority acknowledges that the employer could have been "reckless, negligent or grossly negligent" in failing to maintain properly the brakes on the truck involved in the accident. However, it finds that this alone does not remove it from the exclusivity of the Act as an intentional tort. In other areas of the law, such as punitive damages, we recognize that gross negligence and reckless conduct are distinct from simple negligence or even intentional torts. See e.g., Strickland v. Rossini, 589 So.2d 1268, 1273 (Miss. 1991); Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 465 (Miss. 1983). If such conduct may give rise to an award of punitive damages in either tort or contract law, why should it not transcend the level of intentional torts in the context of workers' compensation?
Today's decision illustrates vividly the basic failure of our system of workers' compensation. Despite the beneficent purposes of the Act, it benefits neither workers not their employers. Article 3, § 24 of the Mississippi Constitution provides that "every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay." However, ten years after his death, Jimmy Wilcoxson's heirs are still in court. Despite the relief it is intended to provide, workers' compensation all too often bars recovery of benefits an injured worker or his heirs might otherwise be entitled to receive. See e.g., Medders v. United States Fidelity and Guaranty Corp., 623 So.2d 979 (Miss. 1993). Indeed, our workers have abridged certain of their constitutional rights as consideration, but workers' compensation has not delivered the "quick fix" it was intended to provide in return.
*351 Workers' compensation, on the other side of the coin, has made employers liable for the payment of tremendous premiums for workers' compensation insurance which generally duplicates other coverage paid for by the employer for his employees. Today, unlike those policies available in 1948, when our workers' compensation laws were first passed, any disability, liability and health insurance coverage an employer provides for its employees offers benefits equal to or better than those provided by workers' compensation insurance. For example, disability policies generally provide a worker with two-thirds of his wages until he reaches the age of sixty-five, as distinguished from the four hundred fifty week maximum coverage afforded by workers' compensation insurance. Life insurance, too, pays greater benefits than those provided by workers' compensation. Employers further are required to carry liability insurance to cover acts of negligence. Of course, because of the exclusivity of workers' compensation, any such policy is rendered inapplicable when an employee is injured because of the negligence of the employer or a fellow employee. Thus, the employer is forced to pay separate premiums for duplicative policies, which may not even provide his employees with the intended coverage.
Once a claim is filed with the Workers' Compensation Commission, both the employer and employee are subject to discrimination in the review process. The Commission, not an administrative law judge, is the finder of facts. Natchez Equipment Co., Inc. v. Gibbs, 623 So.2d 270, 273 (Miss. 1993); Walker Manufacturing Co. v. Cantrell, 577 So.2d 1243, 1246 (Miss. 1991); Hardin's Bakeries v. Dependent of Harrell, 566 So.2d 1261, 1264 (Miss. 1990). By statute, one commissioner is to be classified as a representative of employers, while another is to serve as a representative of employees. Miss. Code Ann. § 71-3-85 (1989). In contrast, when seating a jury to serve as the finder of fact, we are often hesitant to allow an individual sympathetic to a litigant  a friend, relative or business associate  to serve, for fear a party may be prejudiced. Mhoon v. State, 464 So.2d 77 (Miss. 1985); Mississippi Public Service Commission v. Collier, 183 So. 379, 183 Miss. 271 (1938). Why, then, should we create a statutory prejudice in the context of workers' compensation?
Perhaps it is time for the legislature to take another look at workers' compensation to determine whether it is serving its intended purpose  for the both employer and the employee. Employers across the state could save countless dollars  and workers receive better coverage  if the legislature would simply require any business which seeks to do business or obtain a license to business in Mississippi, and which, as required in the workers' compensation statute, employs five or more people, to provide life, health and disability insurance under specified terms. Workers' compensation could then be eliminated.
Jimmy Wilcoxson died nearly ten years ago. Other workers' compensation cases now before this Court involve injuries which occurred in the late 1980s. Justice delayed is justice denied. Accordingly, I dissent.
SULLIVAN, J., joins this opinion.