# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-IA-01763-SCT

*BEN U. BOWDEN, TOM VAUGHN, DEBRA
VAUGHN, VAUGHN & BOWDEN, PA f/k/a
VAUGHN, BOWDEN & WOOTEN, PA, LOWRY
DEVELOPMENT, LLC AND JIM LOWRY*

*v.*

*DIANE YOUNG, CHERIE BROTT BLACKMORE
AND PAUL BLACKMORE*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/07/2011 |
| TRIAL JUDGE: | HON. RICHARD W. MCKENZIE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | JOE SAM OWEN |
| | CARROLL H. INGRAM |
| | JOSEPH DARRELL SONGY |
| ATTORNEYS FOR APPELLEES: | LARRY EDWARD PARRISH |
| | LOUIS H. WATSON, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 09/05/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2011-IA-01783-SCT

*JIM LOWRY AND LOWRY DEVELOPMENT, LLC*

*v.*

*DIANE YOUNG, CHERIE BROTT BLACKMORE
AND PAUL BLACKMORE*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/07/2011 |
| TRIAL JUDGE: | HON. RICHARD W. MCKENZIE |

COURT FROM WHICH APPEALED:  HARRISON COUNTY CIRCUIT COURT,
                            FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANTS:    CARROLL H. INGRAM
                            JOSEPH DARRELL SONGY
ATTORNEYS FOR APPELLEES:     LARRY EDWARD PARRISH
                            LOUIS H. WATSON, JR.
NATURE OF THE CASE:          CIVIL – OTHER
DISPOSITION:                 DISMISSED - 09/05/2013
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE DICKINSON, P.J., KITCHENS AND CHANDLER, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     This is an interlocutory appeal from the trial court's denial of the defendant Vaughn,

Bowden, PA's (V&B) (f/k/a Vaughn, Bowden & Wooten, PA) motion to dismiss for failure

to state a claim upon which relief can be granted.

¶2.     The plaintiffs, Cherie Brott Blackmore and Diane Young,[1] sued their former

employer, the law firm of V&B, as well as the individual partners, Eric Wooten, Ben

Bowden, Tom Vaughn, and office administrator Debra Vaughn, for multiple claims regarding

the presence of toxic mold in two of the offices in which the firm had worked. They also

argue that they were exposed to sewer gas and a natural gas leak. The plaintiffs also sued

Lowry Development, LLC, and its owner, Jim Lowry (collectively, "Lowry"), as they owned

the second building in which both Blackmore and Young claim they were injured. V&B

argues that all claims against it relate to unintentional torts, and therefore are governed by

the Mississippi Workers' Compensation Act (MWCA),[2] and that the plaintiffs' sole avenue

---

[1]Paul Blackmore's suit is derivative of Cherie Blackmore's.

[2]Miss. Code Ann. § 71-3-9 (Rev. 2011).

2

of relief lies with workers' compensation. Alternatively, they argue that the claims of battery and intentional infliction of emotional distress were not timely pled within the one-year statute of limitations for intentional torts.[3] The plaintiffs claim that, beyond the intentional torts, the defendants are guilty of conspiracy to withhold the truth about the toxic mold in the building, and, as a result of that conspiracy, the plaintiffs were injured. They also claim that V&B aided and abetted Lowry in maintaining a public and private nuisance. Lowry joins V&B's arguments that the plaintiffs' claims are barred by the statute of limitations.

¶3.    V&B moved to dismiss the plaintiffs' claims against it under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure, contending that the plaintiffs had failed to present any claims on which relief could be granted. Lowry also filed a Rule12(b)(6) motion to dismiss. The trial court denied both motions. V&B and Lowry petitioned this Court for interlocutory appeal. This Court granted and consolidated both appeals to address whether the trial court properly had denied each defendant's motion to dismiss. Several of the claims against V&B are distinct from the claims against Lowry. However, Lowry has not submitted any briefs to this Court, and instead has joined V&B's arguments to the extent that they apply to Lowry.

¶4.    With respect to the plaintiffs' claims against V&B, we find that the plaintiffs have failed to allege any acts on the part of the defendants which rise to the level of intent that would remove their claims from the exclusivity of the MWCA as defined by this court in *Franklin Corp. v. Tedford*, 18 So. 3d 215 (Miss. 2009), and *Peaster v. David New Drilling*

---

[3]The claims that the defendants denominate as intentional torts are battery, intentional infliction of emotional distress, aiding and abetting, civil conspiracy, and loss of consortium resulting from those so-called intentional torts.

*Co.*, 642 So. 2d 344 (Miss. 1994). Accordingly, we hold that the sole avenue for relief for the plaintiffs' unintentional tort claims against V&B lies in the MWCA. We therefore reverse the trial court's decision and dismiss the complaint against V&B for failure to state a claim upon which relief can be granted.

¶5.     We further find that Lowry's joinder with V&B's briefs leaves unaddressed several issues specific to Lowry. Accordingly, we cannot make an informed decision of the merits of Lowry's interlocutory appeal, and find instead that dismissal of that appeal is appropriate.

### FACTS AND PROCEDURAL HISTORY

¶6.     Cheri Blackmore and Diane Young were legal assistants at V&B. Blackmore worked at V&B from 2006 until December 2009. Young worked at the firm from August 2009 until December 2009. In 2006, Blackmore worked in one of the firm's buildings on 23rd Avenue in Gulfport (Building A). Blackmore contends that her health deteriorated significantly during her time at that building as a result of exposure to toxic mold there. She alleges that several others at the office experienced similar symptoms, and that one employee was even fired for failing to show up for work on account of poor health. This led Blackmore to fear that any complaints or excessive absences would cost her her job. She alleges that the supervisors at the firm ignored her complaints and told the employees to stop whining.

¶7.     In February 2009, the firm moved all of its employees to a new building on 25th Avenue in Gulfport (Building B). This building was owned by Lowry and leased to V&B. V&B admit that this building suffered from moisture intrusion. Blackmore claims that, when she moved to Building B, she continued to suffer the same mold-exposure symptoms she had suffered at Building A. The building also had a gas leak which exposed workers to natural-

4

gas fumes. Several raw-sewage backups occurred in the women's restroom, which flooded into the front of the office. The plaintiffs claim that Lowry Development and V&B were informed repeatedly about the presence of mold in Building B, but did nothing to remediate it. In June 2009, a "Mold Killer Spray" was applied to the surfaces of the office in Building B. The plaintiffs claim this also damaged the health of the V&B employees. In August 2009, Young began working at Building B. She claims that she immediately began to suffer health problems because of exposure to mold. Throughout the time the plaintiffs claim they were exposed to toxic mold at Building B, the partners who have been named defendants also worked in the same building.

¶8.     V&B says that it repeatedly requested that Lowry Development fix the problem of moisture intrusion. V&B ultimately decided to move from the building in the fall of 2009, but it took several months for them to find a suitable new location. In October 2009, a federal agency representative from the Occupational Safety and Health Administration (OSHA) met with V&B to discuss the mold issue. The plaintiffs claim that management at V&B lied to the OSHA representative and stated that there was no mold in the office. V&B collected samples to send to a laboratory to determine the extent of the mold problem in the office. The results of the testing were contained in the October Lab Report. According to the plaintiffs, the report revealed "high levels of mold poisonous to susceptible humans." In December 2009, Blackmore sent a blood sample to a laboratory to be tested for the presence of poisonous mold. The lab report indicated that her blood contained "fine particulates of the type emitted only by mold species poisonous to susceptible humans."

¶9.    In December 2009, Blackmore and Young saw the results of the October Lab Report, which indicated that the Environmental Relative Moldiness Index was 21.1. The report stated that "a score of 5 to 20 is high for any indoor environment." V&B completed its move in January 2010. Neither Blackmore nor Young returned to work after the Christmas holidays of 2009. On December 28, 2009, counsel for Blackmore and Young sent a letter to V&B, stating that the plaintiffs were having health problems as a result of mold exposure and that they intended to file a lawsuit against the firm. On March 30, 2010, the Blackmores, represented by different counsel than in the present suit, filed a complaint against Lowry. Young also filed a complaint against Lowry on May 19, 2010. Subsequently, the plaintiffs filed the present suit against V&B and Lowry Development on March 11, 2011, fifteen months after Blackmore and Young stopped working for V&B. Blackmore also filed a petition to controvert with the Mississippi Workers' Compensation Commission on February 11, 2010, claiming she was entitled to workers' compensation benefits due to her exposure to toxic mold.

¶10.    The plaintiffs brought claims against V&B for battery, intentional infliction of emotional distress, aiding and abetting the maintenance of a public and private nuisance, and conspiracy. They also brought claims against Lowry Development for premises liability, conspiracy, negligent construction, creation and maintenance of a public and private nuisance, and loss of consortium. V&B argued that the plaintiffs did not allege any intentional conduct, and therefore their sole avenue for relief was under the Mississippi Worker's Compensation Act (MWCA). Miss. Code Ann. § 71-3-9 (Rev. 2011). Alternatively, V&B argued that the claims against V&B were for intentional torts, with a

statute of limitations of one year. Since the suit was filed more than a year after the injuries allegedly were suffered by the plaintiffs, V&B argue that they were time-barred. V&B moved to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure for failure to state a claim for which relief can be granted, arguing that the claims were barred either by the MWCA or by the statute of limitations, and the plaintiffs were not entitled to relief. Lowry moved to dismiss as well, joining V&B's argument that the one-year statute of limitations for intentional torts barred the plaintiffs from obtaining relief in their claims against Lowry. The trial court denied the motions, and this Court granted the interlocutory appeals to address whether the trial court erred in denying the motions to dismiss. Lowry never filed a brief but joined V&B's argument.

## STANDARD OF REVIEW

¶11.    "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim . . . . Therefore, we review de novo the denial of a motion to dismiss for failure to state a claim." *Children's Med. Group, P.A. v. Phillips*, 940 So. 2d 931, 933 (Miss. 2006) (citations omitted). A motion to dismiss under the rule should not be granted unless, taking the factual allegations of the complaint as true, "it appears beyond any reasonable doubt that the non movant can prove no set of facts in support of the claim which would entitle them to relief." *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1142 (Miss. 2004).

## ANALYSIS

I.     **The exclusive remedy for the plaintiffs' claims against V&B lies under the Mississippi Workers' Compensation Act.**

¶12.    This Court repeatedly has held that, "in order for a willful tort to be outside the exclusivity of the [MWCA], the employe[r]'s action must be done 'with an actual intent to injure the employee.'" ***Griffin v. Futorian Corp.***, 533 So. 2d 461, 464 (Miss. 1988) (quoting Dunn, *Mississippi Workmen's Compensation* § 22 (3d ed. 1982 & Supp. 1984)). "[A] mere willful and malicious act is insufficient to give rise to the intentional tort exception to the exclusive remedy provisions of the [MWCA] . . . . Reckless or grossly negligent conduct is not enough to remove a claim from the exclusivity of the [MWCA]." ***Blailock v. O'Bannon***, 795 So. 2d 533, 535 (Miss. 2001) (citing ***Peaster***, 642 So. 2d at 348-49). As recently as 2009, this Court found that "Mississippi is in concurrence with an overwhelming majority of states in requiring an 'actual intent to injure' the employee." ***Franklin***, 18 So. 3d at 221. In sum, for a tort claim against an employer to fall outside the MWCA and survive Rule 12(b)(6) dismissal, a plaintiff must allege that the actions of the employer went beyond negligence, gross negligence, or recklessness. In order to succeed on such a claim, the plaintiff must allege and prove that the employer acted with an actual intent to injure the employee, with full knowledge that the employee would be injured and with the purpose of the action being to cause injury to the employee. An examination and comparison of cases in which the actions of the employer were insufficiently intentional to be excepted from our state's workers' compensation system, and those in which the employer's actions were found to be willful and intentional, and thus outside of the MWCA, is instructive.

¶13.    In ***Griffin***, 533 So. 2d at 463-64, this Court found that a complaint which charged the defendants with "wilfully, consciously and intentionally" ordering an employee to work in conditions that were "substantially certain to cause grievous and horrible injuries" was barred

8

by the exclusivity provision of the MWCA. There, the plaintiff was twice injured by the same piece of machinery in separate incidents, which left him without a right hand or use of his right arm the first time, and without a thumb, index, or middle finger on his left hand the second time. *Id.* at 462. This Court held that it was not enough to allege that the employer had committed "aggravated negligence or even . . . knowingly permit[ted] hazardous conditions to exist or willfully fail[ed] to furnish a safe place to work or knowingly order[ed] the employee to perform a dangerous job." *Id.* at 464. The plaintiff's employer was, at most, grossly negligent. Therefore, the sole avenue of relief was through workers' compensation.

¶14.    This Court upheld the lower court's grant of summary judgment in favor of the defendant in *Peaster*, 642 So. 2d at 344. There, an employee of the defendant was crushed to death by a portable drilling rig which the employer was attempting to move. *Id.* at 345. The plaintiffs[4] alleged that the defendant had "'willfully' disregarded its duties to [the decedent], 'intentionally' failed to repair the brakes on the tractors and trailers, and acted with 'gross and reckless disregard for the rights and safety of the public in general and particularly of [the] decedent' and with 'knowledge of substantial certainty of injury.'" *Id.* at 346. Despite the language alleging "intent," this Court found that "the overwhelming language and facts point[ed] to negligence, including gross negligence." *Id.* The Court found that "*Griffin* absolutely bars an intentional tort claim even where the probability of gross negligence exists." *Id.* at 348. Finding that no evidence established that the defendant actually intended to injure the decedent, and that the defendant was guilty of gross

---

[4]The decedent's wrongful-death beneficiaries.

negligence at most, this Court upheld the trial court's grant of summary judgment in favor of the defendants. *Id.* The Court also declined to extend the workers' compensation exception to injuries in which the defendant's actions were "substantially certain" to result in injury or death. *Id.* at 349. The fact that the defendant's conduct was "reckless or grossly negligent" was not enough to remove the case from the coverage of the MWCA. *Id.* The Court concluded that it consistently had stated its position on the issue, which was to refuse to enlarge the scope of the exemption test promulgated by the Legislature. *Id.*

¶15. Essentially, if the facts alleged or proven point to negligence, gross negligence, or recklessness, despite an allegation of actual intent, this Court will find that workers' compensation is the sole avenue for relief for the aggrieved party. *See Peaster*, 642 So. 2d at 346.

¶16. On the other, hand, this Court has found the plaintiff's allegations sufficient to escape workers' compensation exclusivity in several cases. In *Blailock*, 795 So. 2d at 533, this Court considered claims of assault, battery, false imprisonment, and intentional infliction of emotional distress brought by an employee after the employee was physically grabbed and pulled by her manager to his office for disciplinary action. *Id.* at 534. The trial court granted the defendant's motion to dismiss, holding that the employee's remedy lay exclusively under the MWCA. *Id.* In reversing the trial court's judgment, this Court reiterated that only those actions by an employer which occurred with an "actual intent to injure" were sufficient to bring a civil claim outside the exclusivity the MWCA. *Id.* The Court found that the dismissal was erroneous because the damages suffered by the employee were "caused by willful and intentional acts, not negligent or grossly negligent acts." *Id.* The manager's act of grabbing

10

the employee was deemed sufficiently willful and intentional to remove the cause of action from the sphere of workers' compensation.

¶17. The standards for the extraction of a civil claim from the powerful grasp of the MWCA most recently were reemphasized by this Court in *Franklin*, 18 So. 3d at 215. There, the defendant employer was a furniture manufacturer. *Id.* at 222. The plaintiffs included several employees who had worked in the manufacturing plant owned by the defendant, where a pressurized aerosol adhesive had been used to assemble furniture. *Id.* at 222, 224. Some of the plaintiffs were required to apply the adhesive in small, unventilated wooden booths without respiratory masks or protective equipment. *Id.* at 224. At one point, two employees were made to clean up a spill of 330 gallons of the toxic adhesive without any protective clothing or respiratory equipment. *Id.* at 226. The defendants were aware that the adhesive was toxic, that prolonged exposure would cause damage to the central nervous system and respiratory system, and that the manufacturer's instructions specifically stated that the spray was to be used only with adequate ventilation. *Id.* at 222. Nevertheless, the defendants repeatedly and consistently ignored entreaties from employees to install adequate ventilation equipment or provide respiratory and protective gear. *Id.* at 224. Further, after several complaints and a change to the recommended safety parameters of exposure to the adhesive, management specifically instructed other employees to keep all information regarding the adhesive away from the line workers and to remove the safety data sheets, which contained information regarding safe exposure levels, from the adhesive containers. *Id.* at 226. Eventually, several line workers were hospitalized, many of whom experienced

11

spinal-related injuries, with numbness in their lower extremities. *Id.* An industrial hygienist

testified:

> I can't think of [a plant] that was worse[,] to put . . . a group of individuals, into an enclosed area and spray a solvent day in and day out for hours upon hours . . . without any ventilation, without proper respiratory protection is not only [a] violation of a variety of occupational health standards; but it's just, it's difficult for me to explain why someone would do that, especially in light of the complaints that were coming from those individuals conducting that work.

*Id.* at 228.

¶18.    The facts of ***Franklin*** demonstrated outrageous actions on the part of an employer

who exhibited a profit-motivated disregard for its employees' safety as well as an actual

intent to injure. This Court affirmed the trial court's decision to deny the defendant's motion

to dismiss because, taking the plaintiffs' allegations as true, they satisfied the intentional-tort

exception to the application of the MWCA. *Id.* at 232. Ultimately, the facts and testimony

of the employees showed actual intent to injure on the part of the employers sufficient to

overcome the exclusivity provision of the MWCA. However, this Court declined to extend

the "actual intent" standard to include behavior engaged in by the employer which was

"substantially certain to" injure the employees. *Id.* at 244-45 (Dickinson, J., specially

concurring). Six Justices of this Court agreed that, "absent the employer's *deliberate intent*

*and design to injure* the employee, the law in Mississippi – as it currently exists – does not

allow an injured employee to escape the exclusive-remedy provisions of the Act." *Id.* at 245

(emphasis added). The law in Mississippi today remains unchanged from the day of that

decision.

¶19. Here, the trial court denied the defendants' Rule 12(b)(6) motion to dismiss. Accordingly, we are bound to look only at the complaint filed by the plaintiffs and to determine whether, taking all of the allegations as true, the complaint makes a claim upon which relief may be granted. In this case, the complaint is voluminous. It consists of 155 pages, containing 818 enumerated paragraphs. The plaintiffs asserted claims for battery, intentional infliction of emotional distress (IIED), creating and maintaining a nuisance, intentionally failing to investigate and remediate contamination of property, maintaining property in a dangerous condition, and conspiring and aiding and abetting with Lowry Development in negligently maintaining Building B as well as committing the above-named torts. We will examine each claim to determine whether it falls outside the exclusivity provision of the MWCA.

1. ***Whether the claims fall outside of the exclusivity of the Mississippi Workers' Compensation Act.***

A.     **Battery**

¶20. The plaintiffs allege that they were exposed intentionally to toxic mold, to a toxic Mold Killer Spray designed to get rid of the mold, and to poisonous fumes from a sewage leak. The claim for battery states:

> Vaughn Firm deliberately contrived a series of wrongful acts/omissions, more particularly stated in enumerated paragraphs 288, 343, 345, 355-357, 362, 369, 425, and 556 describing events/occurrences that took place in [Building A] and [Building B] herein, commencing in or near Spring 2006 up through and including February 2011, by use of Vaughn Firm's Corporate Knowledge (i.e., the collective, combined and composite information accumulated by each and every past and present employee and other agent, accumulated in each and every book and record in use in the past and presently, accumulated as constructive knowledge and accumulated by rule of inquiry) . . ., and battered the persons of Mrs. Blackmore, Ms. Young and other Vaughn Firm employees.

13

¶21.	With regard to the toxic mold, the plaintiffs contend that V&B battered the plaintiffs when it failed to remediate the mold conditions, and the plaintiffs thereafter inhaled the toxic mold. However, none of the claims asserts that V&B acted with "actual intent" to batter and injure the plaintiffs. Several of the alleged acts of battery involved the use of the Mold Killer Spray, which was being used to kill the mold that was causing injury to the plaintiffs. It is not possible that the defendants were allowing the mold to exist with the intent of injuring the plaintiffs while at the same time attempting to destroy the mold. Further, the application of the Mold Killer Spray clearly was not done with any "actual intent" to injure the plaintiffs. Rather, it was applied in an attempt to remediate the mold situation. Similarly, the plaintiffs contend that they were battered by toxic gas emanating from sewage backup. This claim must fail because there is no allegation that the defendants permitted the sewage backup to exist with the actual intent to injure the plaintiffs.

¶22.	The plaintiffs' complaint attempts to frame the facts in a way that mirrors those found in *Franklin*. They point to the fact that, here, the defendants did not post Material Safety Data Sheets (MSDS) regarding the effects of the Mold Killer Spray where the employees could read them. In *Franklin*, the defendant employer removed the MSDS from the containers of the toxic adhesive which the employees were forced to spray into a small, unventilated wooden booth without respiratory equipment or safety gear. Here, the Mold Killer Spray was applied in the office in an attempt to combat the mold problem of which the plaintiffs complained. This is not a situation remotely similar to the one in which the plaintiffs were forced to spray toxic adhesive into a small, unventilated wooden box. While the application of the spray may have been negligent, or even grossly negligent, it simply did

14

not rise to the level of "actual intent" required to bring the claim of battery outside of the scope of the MWCA.

¶23.    Although the plaintiffs may disagree with how V&B attempted to remedy the mold problem, they have failed to state a claim upon which relief can be granted, because they have failed to show that any of the actions alleged as battery were taken with the specific and actual intent to injure them. Accordingly, the claim for battery must be dismissed.

## B.    Intentional Infliction of Emotional Distress

¶24.    The plaintiffs allege that V&B "acted willfully and wantonly toward Mrs. Blackmore and Ms. Young" and caused them "to suffer severe emotional distress as a result of [the] acts/omissions of Vaughn Firm." The plaintiffs allege that a pattern of dishonesty was perpetrated by V&B to cast doubt on the plaintiffs' suspicions of the existence of the mold and their own symptoms. They point to several instances in which their superiors at V&B denied the existence of mold, suggested alternate sources of the plaintiffs' ailments, or stated that the problem would be rectified, only to do nothing or not enough. The plaintiffs allege that the defendants warned them not to discuss the mold issue, and suggested they might be depressed or psychosomatic rather than physically ill. They also allege that the defendants hid the October Lab Report, which indicated that the mold level in the office was more than five times greater than OSHA recommendations. However, in the same statement of facts, the plaintiffs admit that V&B admitted that the October Lab Report indicated high levels of mold in the office and that the firm "decided to move out of the 1617 office." The defendants also apparently denied smelling a gas leak in the office. The plaintiffs also were tasked to clean mold off the office furniture before it was moved to another, mold-free office. Further,

15

the plaintiffs eventually discovered the October Lab Report and found that it listed several types of mold that were found in the building in toxic amounts to susceptible persons.

¶25.    Under Mississippi law, a plaintiff may recover under a theory of intentional infliction of emotional distress "[w]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally . . . even though there has been no physical injury. In such instances, it is the nature of the act itself – as opposed to the seriousness of the consequences – which gives impetus to legal redress . . . ." ***Sears, Roebuck & Co. v. Devers***, 405 So. 2d 898, 902 (Miss. 1981), *overruled on other grounds by* ***Adams v. U.S. Homecrafters, Inc.***, 744 So. 2d 736 (Miss. 1999). In other words, the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." ***Pegues v. Emerson Elec. Co.***, 913 F. Supp. 976, 982 (N.D. Miss. 1996) (quoting *Restatement* (*Second*) *of Torts* § 46 cmt. d. (1965)). Accordingly,  the plaintiffs must have alleged that the conduct that caused their emotional distress was "so outrageous in character, and so extreme in degree," that they might recover under a theory of intentional infliction of emotional distress and survive a motion to dismiss.

¶26.    Taking the allegations of the plaintiffs' complaint as true, they have failed to state a claim upon which relief can be granted. V&B initially denied that there was any mold in the building. Management suggested other potential causes of the plaintiffs' ailments. When it became apparent that mold was in fact present in the building, V&B attempted to remediate the situation by applying the Mold Killer Spray. Once the October Lab Report was received, V&B specifically informed the plaintiffs that it would search for new office space. While the

16

defendants' handling of the mold problem may have been negligent, the allegations do not rise to the level of outrageous and extreme conduct that is necessary to support a claim for intentional infliction of emotional distress. Further, the plaintiffs still must be able to show that the actions of the defendants were conducted with "actual intent" to injure the plaintiffs. The fact that V&B attempted to remediate the mold issue, and ultimately decided to relocate its offices due to the mold, leads to the inevitable conclusion that the actions of V&B were not done with the actual intent to inflict emotional distress upon the plaintiffs. The claim for intentional infliction of emotional dismiss fails as a matter of law and must be dismissed.

### C. Conspiracy and Aiding and Abetting

¶27. The plaintiffs make two separate claims related to conspiracy and aiding and abetting. They claim that V&B aided and abetted Lowry Development in maintaining a public and private nuisance, and in battering and inflicting emotional distress upon the plaintiffs. They also claim that V&B and Lowry Development conspired together by concealing the presence of toxic mold in Building B, by providing false testimony to the Mississippi Division of Employment Security in March 2010, by providing false statements to OSHA regarding the presence of mold in October 2009, and by concealing an October 2009 report which indicated dangerous levels of toxic mold in the building. The conspiracy is alleged to have occurred in order to retain the services of the plaintiffs.

¶28. The plaintiffs seem to claim that V&B conspired with Lowry Development to conceal the truth about the presence of toxic mold in Building B. The gist of the argument is that the conspiracy to conceal the truth directly led to the battery and intentional infliction of emotional distress of Blackmore and Young.

17

¶29. Because the claims for battery and intentional infliction of emotional distress fail because they do not allege, and the facts of the case do not support, that V&B acted with "actual intent" to injure the plaintiffs, the claims for aiding and abetting in the commission of battery and intentional infliction of emotional distress or conspiracy to commit battery and intentional infliction of emotional distress must fail as well. It is obvious that, if the defendants did not actually intend to batter or inflict emotional distress upon the plaintiffs, then they did not conspire to batter or inflict emotional distress upon the plaintiffs. The claims for conspiracy and aiding and abetting to commit battery and intentional infliction of emotional distress should be dismissed for failure to make a claim for which relief can be granted, because the underlying substantive claims of battery and intentional infliction of emotional distress upon which the claims are based are themselves incapable of achieving relief.

¶30. The plaintiffs also claim that V&B aided and abetted Lowry Development in the maintenance of a public nuisance. To succeed in this claim, the plaintiffs would have to prove that V&B gave substantial assistance to Lowry Development to maintain the public and private nuisance with the actual intent to injure the plaintiffs. The complaint and briefs show that V&B continuously requested that Lowry Development remedy the moisture intrusion problems at Building B. Further, V&B broke its lease with Lowry Development to move out of Building B. V&B attempted to remedy the nuisance and eventually moved out of the building when it was not remedied.

¶31. Taking the complaint as true, V&B did not aid and abet Lowry Development in maintaining a nuisance, and it certainly did not do so with the actual intent to injure the

18

plaintiffs. This Court has held that it is not enough to allege that the employer "knowingly permit[ted] hazardous conditions to exist or willfully fail[ed] to furnish a safe place to work or knowingly order[ed] the employee to perform a dangerous job." *Griffin*, 533 So. 2d at 464. This is the essence of the plaintiffs' claim against V&B. The claim must be dismissed as a matter of law.

**2. *Whether this Court should change the "actual intent" requirement for claims to fall outside of the MWCA.***

¶32. The plaintiffs urge this Court to adopt the reasoning of Justice Graves's concurring opinion in *Franklin*. *Franklin*, 18 So. 3d at 242. Justice Graves opined that employers' actions that were "substantially certain" to result in injury also should be exempt from workers' compensation immunity. *Id.* at 242-43. This case presents no compelling reason to change the precedent created in *Franklin*. This Court consistently has rejected that position, and a majority of states are in agreement. In *Franklin*, the Court stated that, to make a claim that falls outside MWCA immunity, the plaintiff must show actual intent to injure the employee. *Id.* at 232. *Franklin* presented a much more serious and grievous case of potential negligence than the one before us. It is unnecessary for the Court to revisit this argument, as the precedent is settled.

## II. Lowry's interlocutory appeal is dismissed.

¶33. Lowry filed its petition for interlocutory appeal on December 1, 2011, three days after V&B filed its petition for interlocutory appeal. Lowry argued that the claims against it were intentional torts governed by a one-year statute of limitations, and that the trial court erred in denying Lowry's Rule 12(b)(6) motion to dismiss. On appeal, Lowry did not file a brief

and eventually joined V&B, upon being notified by the Supreme Court Clerk of its having failed to file a brief. However, V&B's brief explicitly states that "[t]he Plaintiffs' claims against the law firm and its managerial personnel are totally distinct from the claims against the landlord [Lowry] and the issues regarding the claims against the landlord are not raised in this appeal." Further, V&B argues that it eventually moved out of Lowry's building due, it alleges, to Lowry's failure to remedy the numerous problems about which V&B complained. V&B is immune from tort liability because of workers' compensation. Lowry is not. The claims and defenses are, in fact, distinct, and these parties' interests are not aligned. Without further briefing from the Lowry defendants, we are unable to determine their position on several of the claims against them and the law supporting those positions.

¶34.   Interlocutory appeal is granted by permission of this Court. *See* M.R.A.P. 5 ("Interlocutory Appeal by Permission"). Accordingly, it is within our discretion to grant or deny interlocutory appeal. This Court granted Lowry's petition for interlocutory appeal; but, upon further review, we have determined that interlocutory appeal with regard to Lowry is not appropriate. In light of the above, Lowry's interlocutory appeal is dismissed. The case therefore is remanded to the trial court for further proceedings.

## CONCLUSION

¶35.   In actions against an employer or coemployee, the Mississippi Workers' Compensation Act generally provides the sole avenue of relief for an injured employee. The only way to bring a tort claim outside the exclusivity of the act is to allege that the employer or coemployee acted with actual intent to injure the injured party. Taking the allegations in the complaint as true, the plaintiffs in this case have failed to state a claim for which relief

20

can be granted. The complaint cannot support the argument that the defendants acted with the actual intent to injure the plaintiffs. Further, we now decline to extend the standard to include those acts which are "substantially certain" to result in injury. Therefore, the sole avenue of relief for the plaintiffs lies in a claim under the Mississippi Workers' Compensation Act. Accordingly, we reverse the Circuit Court of the First Judicial District of Harrison County's denial of the defendants' Motion to Dismiss, and render judgment dismissing all claims against the defendants.

¶36.    The interlocutory appeal of Lowry Development, Inc. and Jim Lowry is hereby dismissed.

¶37.    **AS TO 2011-IA-01763-SCT: REVERSED AND RENDERED. AS TO 2011-IA-01783-SCT: DISMISSED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**